338 P.2d 1060

C. B. LYLE and Lee Kious d/b/a The Lyle Adjustment Company, Appellants,

v.

Tony LUNA, as Commissioner of Revenue of the State of New Mexico, and George M. Case, as Director of the Emergency School Tax Division of the Bureau of Revenue of the State of New Mexico, Appellees.

No. 6455.

Supreme Court of New Mexico.

May 11, 1959.

Gilbert, White & Gilbert, M. W. Hamilton, Santa Fe, for appellants.

Frank B. Zinn, Atty. Gen., Robert F. Pyatt, Asst. Atty. Gen., for appellees.

Bean & Snead, Roswell, Harold A. Roberts, Santa Fe, amici curiae.

SADLER, Justice.

This is an appeal by the plaintiffs (appellants) associated, presumptively, as partners under the firm name of The Lyle Adjustment Company, in a declaratory judgment action against Tony Luna as Commissioner of Revenue of New Mexico

and, as such, Director of Bureau of Revenue of said State and George M. Case, Director of Emergency School Tax Division, for whom by stipulation E. S. Walker, as Commissioner aforesaid, and, likewise, Carl Folkner, as Director, aforesaid, have been substituted, respectively, as parties appellee herein, due to a change of administration.

The object of the action is succinctly stated by the trial judge in the initial paragraphs of a supplemental opinion filed by him in the cause preliminary to entry of the final decree. It reads:

"By Complaint filed in this cause on July 22, 1957, the Plaintiffs sought:

"(A) A permanent injunction preventing enforcement of the lien of the Defendant Commissioner of Revenue of the State of New Mexico, for the collection of emergency school taxes assessed against the Plaintiffs on their income for the period of April 1, 1953, through March 31, 1956, in the total amount of $8,099.67, including penalty and interest.

"(B) A declaration by the Court that Section 58–5–1, New Mexico Statutes, 1953 Annotated, exempts the Plaintiffs from payment of the taxes levied by the Emergency School Tax Act [1953 Comp. § 72–16–1 et seq.] and

"(C) All other just, proper and equitable relief."

The defendants answered and admitted they had made demand on the plaintiffs for the amount alleged in the complaint under assessments for the period between April 1, 1953, through March 31, 1956, in the total amount of $8,099.67, and had issued a notice of claim of tax lien, filing same in the office of county clerk of Bernalillo County. They also agreed that, as alleged in the complaint, the plaintiffs would be required, but not unlawfully, to continue payment of the taxes due the State of New Mexico by virtue of the business in which they were engaged. The remainder of the allegations of the answer consisted of general denials.

The Seventh Legislature of the State of New Mexico enacted as Chapter 135, L. 1925 (1953 Comp., § 58–5–1) reading as follows:

"Every insurance company transacting or seeking admission to transact insurance business in the state of New Mexico shall pay the superintendent the following fees:

\*     \*     \*     \*     \*     \*

"For each annual license issued to adjusters, the superintendent shall require from the applicant a fee of two ($2.00) dollars.

\*     \*     \*     \*     \*     \*

"Every insurance company licensed to transact an insurance business in the state of New Mexico shall also pay

annually on or before the first day of March each year two (2%) per centum of the gross premiums, membership and policy fees received by it on insurance covering risks within the state during the preceding calendar year, less all return premiums including dividends paid or credited to policyholders and premiums received for reinsurance on New Mexico risks.

"The payment of the aforesaid taxes, licenses and fees provided for in this act shall be in lieu of all other taxes, licenses, and fees of every kind, now or hereafter, imposed by this state or any political subdivision thereof, on any insurance company or agent thereof, excepting the regular state, county and city taxes on property located in the state of New Mexico."

In 1935 the Twelfth Legislature of the State of New Mexico enacted Chapter 73, L.1935, being 1953 Comp., §§ 72–16–1 to 72–16–47, inclusive, commonly referred to as the Emergency School Tax, under the provisions whereof a sales tax at the rate therein prescribed was levied upon persons, firms and corporations transacting business within the State of New Mexico.

It was the contention of the plaintiffs before the lower court, that insurance adjusters of the state were exempt from the payment of the sales tax by reason of the provisions of 1953 Comp., § 58–5–1, heretofore quoted. Indeed, prior to the month of June, 1956, not only had no effort theretofore been made by the defendants or their predecessors in office to collect the Emergency School Tax from the plaintiffs or other insurance adjusters but, actually, the office of defendants administering said Emergency School Tax had construed the law up to that time, as exempting adjusters from the payment of the sales tax.

For instance, the director of the Emergency School Tax Division, a predecessor of one of the defendants, on or about May 15, 1956, wrote the Hulsman Claim Service of Albuquerque, New Mexico, a letter advising such service that insurance adjusters were not subject to the sales tax. A directive from the office of the then Director of Emergency School Tax Division, Bureau of Revenue, was issued on or about May 15, 1956, *to all district supervisors of the State of New Mexico,* advising them the insurance adjusters were not subject to the sales tax act.

Nevertheless, on or about the 21st day of June, 1956, the same Director, a predecessor of one of these defendants, wrote the Hulsman Claim Service advising it that insurance adjusters were subject to the sales tax. This was the first intimation of any kind received by plaintiffs of a change in policy by the office or offices of the defendants.

Accordingly, during the latter part of 1956 the office of the Emergency School Tax Division of the Bureau of Revenue of

the State of New Mexico, through its then Director, made demand upon plaintiffs herein for payment of sales tax as provided under the provisions of 1953 Comp., §§ 72–16–1 to 72–16–47, covering the period from the first day of April, 1953, to March 31, 1956, in the total amount of $8,099.67, issuing a notice of claim of tax lien for said amount and filing same in the office of the county clerk of Bernalillo County.

Although the complaint in this cause refers to taxes assessed for a specific period and the debit voucher and notice of tax lien issued in connection therewith were made a part of the complaint, all parties agreed that the primary question involved and argued before the court by the parties herein was whether insurance adjusters doing business within the State were or were not subject to the sales tax. As said by counsel for the plaintiffs: "The question of the specific tax involved was purely incidental and was at all times so treated by the parties."

An agreed statement of facts was filed by the parties to the cause and after a hearing upon it the trial court entered a judgment following the filing by the trial judge of a memorandum opinion upholding the contention of the defendants and against the position taken by the plaintiffs. It was at this point and after the court's memorandum opinion had been filed, but prior to the entry of judgment thereon, that the parties entered into what the attorneys on both sides considered a fair and equitable settlement of the issues involved. The stipulation of settlement was entered into by the Attorney General of the State of New Mexico on behalf of the plaintiffs under the authority of the provisions of 1953 Comp., § 17–1–15.

Notwithstanding the absence of any indication that the stipulation was tainted by fraud, misrepresentation, mistake or improper motives on the part of anyone, insofar as anything said, done or found by the trial judge was concerned, he declined to approve the stipulation and entered a judgment denying all relief to the plaintiffs. It is from that judgment this appeal is prosecuted for a review and correction thereof. The trial court was obviously of the opinion that the Attorney General lacked the constitutional power to bind the State by the stipulation submitted.

As an introduction to their argument counsel for the plaintiff set out the statute under which it is said the Attorney General acted in signing the Stipulation of Settlement he did. It reads:

*"Compromise, satisfaction or release by attorney general or district attorney.* —The attorney general and district attorneys of this state in their respective districts, when any civil proceedings may be pending in their respective districts, in the district court, in which the state or any county may be a party,

whether the same be an ordinary suit, scire facias proceedings, proceedings growing out of any criminal prosecution, or otherwise, shall have power to compromise or settle said suit or proceedings, or grant a release or enter satisfaction in whole or in part, of any claim or judgment in the name of the state or county, or dismiss the same, or take any other steps or proceedings therein which to him may appear proper and right; and all such civil suits and proceedings shall be entirely under the management and control of the said attorney general or district attorneys, and all compromises, releases and satisfactions heretofore made or entered into by said officers are hereby confirmed and ratified."

The considerations, six in number, which it is said were persuasive factors in inducing the signing of the stipulation by the Attorney General and the attorneys for the Bureau of Revenue, are set out in the brief in chief, as follows:

"1. Since the passage of the Sales Tax Act in 1935 until the year 1956 the taxing officials had construed this law as not being applicable to insurance adjusters, and had so advised the insurance adjusters of this State.

"2. By reason of this fact, insurance adjusters had made no attempt to pass on the tax, and could not now do so.

"3. That if insurance adjusters were now required to pay this tax for all back years, it would be an extremely unfair hardship and probably would, in many cases, bankrupt the adjusters.

"4. That a fair and just starting point from the standpoint of all parties concerned was the date the taxing officials changed their administrative ruling with reference to these laws.

"5. That several extremely close questions of law were involved, and if the trial court should be reversed on appeal on the question of Appellants' liability, the State would lose all of the revenue.

"6. That by the terms of the stipulation the Appellants agree to recognize their tax liability regardless of whether it might be applicable to them as a matter of law."

Counsel for the plaintiff urge upon us, strongly, that the Attorney General and the attorney for the Bureau of Revenue, were acting squarely within the power conferred by the foregoing statute and that the trial court could not properly withhold its approval of the stipulation. While agreeing the trial court is duty bound to scrutinize, carefully, judgments submitted to it for entry, they assert, nevertheless, that it was neither within its power, nor was it the duty of the court, to substitute its judgment for that of the parties, acting

through their counsel, on matters compromised under the circumstances here present.

It was agreed by the settlement embodied in the written stipulation that the liability or non-liability of the plaintiffs for payment of the sales tax demanded, as well as all prior taxes accruing since the enactment of 1953 Comp., §§ 72–16–1 to 72–16–47, presented a justiciable controversy, the plaintiffs claiming non-liability and the defendants asserting their liability. The pleadings thus present a case where, if plaintiffs be correct, they owe nothing under the Emergency School Tax Act and, if defendants be correct, the plaintiffs owe it all. It was in such circumstances that the parties acting through their respective counsel were moved to compromise the claim by the written stipulation, whereby it was agreed:

"That by reason of the facts as hereinbefore set out, it is stipulated that any and all indebtedness due the State of New Mexxico from the plaintiffs herein by reason of the provisions of Section 72–16–1 to 72–16–47, inclusive, New Mexico Statutes 1953 Annotated (Sales Tax Act), be and it hereby is compromised and settled as follows:

"1. That the plaintiffs herein be required to pay the tax as provided for in said Sales Tax Act from and after the 21st day of June, 1956 in accordance with the terms thereof, with the same force and effect as if said Sales Tax Act specifically applied to insurance adjusters.

"2. That the plaintiffs be relieved and discharged from any and all liability by reason of said Sales Tax Act prior to said 21st day of June, 1956.

"3. That no penalty and interest be demanded of the plaintiffs herein upon said taxes from the 21st day of June, 1956 to the 30th day of November, 1957, provided the taxes for said period be reported and paid by the plaintiffs within thirty days from the date of the judgment herein.

"4. That from and after said 30th day of November, 1957, the plaintiffs herein pay the sales tax as provided for in said Act in accordance with the terms thereof, with the same force and effect as if said Sales Tax Act specifically applied to insurance adjusters.

"5. That upon the payment by the plaintiffs of said taxes from the 21st day of June, 1956 to the 30th day of November, 1957, any and all debit vouchers, liens, or claims of liens issued or filed by the defendants herein, or either of them, against the plaintiffs shall be released, cancelled, and discharged.

"6. That a judgment may be rendered in this cause in accordance with

the terms of this stipulation; such judgment to be applicable to all insurance adjusters similarly situated and taking advantage of the terms hereof."

Strangely, though not altogether unusual, the same case is relied upon by both the plaintiffs and by the trial court in support of the settlement agreed upon by the parties. The case mentioned is that of State v. State Investment Company, 30 N. M. 491, 239 P. 741, 746. The trial judge quoted a portion of the opinion in that case relating to both the power and the duty of the court to investigate carefully all settlements made by the Attorney General under the statute quoted, supra, to-wit, 1953 Comp., § 17–1–15, as follows:

"Not so with our statute. It provides for such action in each case 'as may appear proper and right' and evidently contemplates an investigation of the facts by the tax attorneys and by the court under the provisions of section 32 of our article IV of the Constitution."

The dissenting opinion of the late Justice Hudspeth in Board of County Com'rs of Quay County v. Wasson, 37 N.M. 503, 24 P.2d 1098, in which he also quoted the same language from our opinion in State v. State Investment Co., supra, was referred to by the trial judge in his supplemental opinion filed, though it was agreed the Wasson case did not involve the statute with which we are here concerned on powers of the Attorney General.

This Court in State v. State Investment Company, cited above, was dealing with the identical statute, 1953 Comp., § 17–1–15, already quoted, in a tax suit, as here, involving the power of the Attorney General and District Attorney to sign a written stipulation compromising a claim for ad valorem taxes. The power was challenged by virtue of Const., Art. 4, § 32, reading:

"No obligation or liability of any person, association or corporation, held or owned by or owing to the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released, postponed, or in any way diminished by the Legislature, nor shall any such obligation or liability be extinguished except by the payment thereof into the proper treasury, or by proper proceeding in court."

First, the court dealt with power of the Attorney General and District Attorney under 1953 Comp., § 17–1–15, supra. The court said:

"This statute was enacted in 1876, and has been the law ever since, and was carried forward into the Code as section 1863. A simple reading of the act shows that it authorizes the action taken in these cases. It governs all civil proceedings 'whether the same be

an ordinary suit * * * or otherwise.' It is a matter of common knowledge that for years district attorneys have acted under it, just as was done in these cases. It is clear, therefore, that, unless restrained by some other provisions of law, the district attorney and special attorney for the tax commission were within their powers in making the stipulation for these judgments, and if so, the state is bound."

After holding the statute did apply to tax suits, the court went on to meet the claim that the Attorney General was debarred by Const., Art. 4, § 32, from agreeing to a compromise of the tax claim in the suits involved, and held against the contention, saying of the proviso:

"It is to be observed that the first clause is a restriction on the Legislature itself, and not upon taxing officers. The latter part of the act provides two methods of extinguishment of the obligation or liability—one, payment; and, the other, a proper proceeding in court.

"It is argued, however, that in cause No. 1167 there was no proper proceeding in court, on account of restrictions in the statutes at that time. In this, counsel is clearly in error.

"It follows that cause No. 1167 was a legal proceeding in court within the constitutional requirement, and, the attorneys for the state having the power to compromise and settle the claim, the judgment is valid and binding on the parties."

This Court used other language in State v. State Investment Co., supra, pertinent to the present situation. It said:

"In connection with all of these judgments, it is to be noted that there is no allegation of fraud, misrepresentation, or mistake. These stipulations, so far as appears from the record, were entered into in the utmost good faith by the counsel for the state. Just what moved their discretion does not appear, but, in the absence of allegation to the contrary, it is to be presumed to be based upon sufficient and proper facts."

■ Speaking of the powers of the Attorney General, at large, the author of the text on the subject in 6 C.J. 814, said:

"In the absence of explicit legislative expression to the contrary, the attorney general possesses entire dominion over every suit instituted by him in his official capacity whether there is a relator or not. As an incident of such control, the attorney general has power to dismiss or to discontinue suits brought by him either with or without a stipulation by the other party, and to make any dispositions of

such suits that he deems best for the interest of the State." See also 7 C.J.S. Attorney General § 8.

See, also, the cases of State ex rel. Wilson v. Young, 44 Wyo. 6, 7 P.2d 216, 81 A.L.R. 114, State v. Finch, 128 Kan. 665, 280 P. 910, 66 A.L.R. 1369, and State ex rel. Carmichael v. Jones, 252 Ala. 479, 41 So.2d 280, 282, for typical cases dealing with the general powers of the Attorney General, many of which are in states having a constitutional proviso similar to our Art. 4, § 32, cited above.

In State ex rel. Carmichael v. Jones, supra, the Supreme Court of Alabama, among other things, said:

"But the remedy of mandamus is available to require the performance of a ministerial act as distinguished from one judicial, and the act of entering a consent judgment in a matter lawfully agreed upon between the parties and within the authority of the court is ministerial. The sense in which the act is judicial is the examination of the record to determine the court's authority and where the necessary parties have lawfully agreed as regards such matter within its jurisdiction, the courts generally will perform the ministerial act of entering the judgment on the agreement. * * * So pretermitting any question of bad faith, which is not here raised, it is our conclusion that the attorney general, as the chief law officer of the state, was fully empowered to make any bona fide disposition of the cause as in his judgment might be deemed to be to the best interest of the state, unless inhibited by organic law."

It is, of course, to be presumed that in lending his approval to a settlement such as this, the trial judge will observe the words of caution to be found in our own case of State v. State Investment Co., supra, to make sure there is a complete absence in the evidence of any factor touching the integrity of the motives inducing the settlement. Certainly, there is an entire absence of any such implication in the case at bar.

In like manner, it is apt to remark, as reflected in the persuasive comment of the trial judge, found in the original and supplemental opinions filed in the cause, that he questioned both the power of the Attorney General to enter into the settlement proposed, and its wisdom, as well; and above all, his own power to approve it, but never the good faith of the parties making the settlement. It was entitled to his approval which he mistakenly withheld.

█ The conclusion reached on the question just decided, namely, power of the Attorney General to make a binding stipulation such as was subscribed by him, ren-

ders it unnecessary to determine the controversy as to which of the opposing counsel were right on the critical issue of liability or non-liability of the plaintiffs for payment of the sales tax imposed by 1953 Comp., §§ 72–16–1 to 72–16–47 in spite of the exemption claimed by plaintiffs under 1953 Comp., § 58–5–1.

We might very well end our opinion at this point but for this fact. It was suggested in the trial judge's supplemental opinion that he was justified in declining to enter a judgment on the stipulation filed because (1) it was outside the scope of the pleadings and, (2) it was not based upon a petition for further relief, as prescribed by the declaratory judgment act. 1953 Comp., §§ 22–6–1 to 22–6–3, incl. The second section provides:

"Further relief, based on declaratory judgment or decree, may be granted whenever necessary or proper. The application shall be by petition to the court having jurisdiction to grant relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party, whose rights have been adjudicated by the declaration, to show cause why further relief should not be granted forthwith."

We think this contention ignores the fact that, as shown by the trial court's statement of the issues, set out at the beginning of this opinion, the complaint in the case sought (1) a permanent injunction against enforcement; (2) a declaration that 1953 Comp., § 58–5–1, exempts the plaintiffs from the tax involved, and (3) all other just and proper relief. And, further, it is to be observed that a consent judgment based upon the stipulation was asked therein. We think an order of confirmation of the stipulation of settlement was proper under the allegations of the complaint, as amplified by the stipulation itself and the consent therein to entry of judgment approving same.

For authorities illuminating the subject and supporting the conclusion we reach on this question, see Simmons v. Reynolds, 179 Kan. 785, 298 P.2d 345; Gray v. Defa, 103 Utah 339, 135 P.2d 251, 155 A.L.R. 495; Washington-Detroit Theatre Company v. Moore, 249 Mich. 673, 229 N.W. 618, 68 A.L.R. 105 (109).

In 1 Anderson on Declaratory Judgments 706, § 304, the author states:

"Where the plaintiff's pleading, admittedly, is not as broad and specific as it might have been, but the defendants, instead of attacking the plaintiff's pleading, entered their appearance, and filed an answer, in which they set up their defenses, and sought to justify their conduct, and then stipulated the

essential facts and in effect entered into a submission of the cause upon the theories of the respective parties without objection, and having done so they are bound by the judgment entered to the same extent as if the pleadings had been full and ample.

"In other words where an action for a declaratory judgment is submitted upon a stipulation that completely covers the case, then the matter of pleadings becomes immaterial, and the fact that the pleadings contain no allegation upon a certain issue involved, will not be considered. A stipulation may supply absent allegations of an answer. A stipulation may supply the failure to allege the amount involved, if such amount is contained in the stipulation itself."

In closing we desire to express our appreciation to attorneys Richard G. Bean and Edward P. Snead, Jr., of the firm of Bean and Snead of Roswell, New Mexico, and Harold A. Roberts of Santa Fe, New Mexico, for rendering valuable service to us as amici curiae in this case under appointment of the Court.

It follows from what has been said that the trial court erred in declining to lend its approval to the stipulation filed by the parties. Accordingly, the judgment and decree entered by the trial court will be and the same is hereby vacated and we ourselves shall and do hereby approve said stipulation and declare the same entitled to enforcement according to its terms and provisions.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and CARMODY, JJ., concur.