STATE of Oklahoma ex rel. Larry DERRY-BERRY, Attorney General of Oklahoma, Appellant,

v.

KERR–McGEE CORPORATION et al., Appellees.

No. 45755.

Supreme Court of Oklahoma.

Oct. 30, 1973.

Rehearing Denied Dec. 18, 1973.

Larry Derryberry, Atty. Gen., Odie A. Nance, Asst. Atty. Gen., for appellant.

Coleman Hayes, Oklahoma City, for appellees, Kerr-McGee Corp.

John J. Runzer, Philadelphia, Pa., John A. Ladner, Jr., Tulsa, for Sun Oil Co.

S. E. Floren, Bartlesville, Richard, B. McDermott, Tulsa, for Phillips Petroleum Co.

HODGES, Justice.

The main issue to be decided on an appeal is whether there was consideration for the dismissal with prejudice filed in the district court of Oklahoma County of the State "asphalt price fixing case". Appellant (Derryberry) argues that there was no consideration for the dismissal and therefore it was not within the lawful authority of the attorney general. Appellees (Oil Companies) assert that the Attorney General had lawful authority to compromise the case and that lawful and adequate consideration supported the settlement agreement. The question of actual or constructive fraud in the procurement of the dismissal with prejudice is also raised.

In October 1965, Charles Nesbitt, Attorney General, filed two actions on behalf of the State of Oklahoma seeking to recover damages against Kerr-McGee Oil Industries, Inc., Phillips Petroleum Company, D–X Sunray Oil Company (now Sun Oil Company), and other defendant companies. He asserted that the defendants had allegedly conspired to fix prices in the sale of asphalt to the State and sought to recover treble damages.

One of these actions was filed in Federal District Court to recover more than $37,000,000.00 for such alleged wrongful acts during the years 1961 to 1965, as a violation of Federal Anti-Trust statutes.

The other of the two actions was filed in the State District Court of Oklahoma County for recovery of $30,000,000.00 in treble damages asserting the same kind of conspiracy by the same three defendants, and others, during the years 1948 through 1961.

After he succeeded Nesbitt as Attorney General, G. T. Blankenship engaged private counsel as the State's Attorney in the cases, and the Federal case, was tried, while the State case, was left pending. Thereafter, on July 26, 1968, a verdict of $1,548,371.31 in actual damages was re-

turned for the plaintiff State against the oil company defendants in the federal case. Judgment was entered in this case for treble that amount, or $4,612,063.93 in damages, $9,800.38 in court costs, and plaintiff's attorney's fees of $285,000.00

Some time after the defendants had filed motions for judgment notwithstanding the verdict, for a new trial, and to vacate the judgment in the federal case, the attorneys for Kerr-McGee, Phillips and Sun started negotiations for a settlement with the State of both cases, which culminated in a compromise agreement, on or about January 13, 1969. According to the undisputed testimony, this oral agreement contemplated that the Federal District Judge be asked to order a remittitur of $2,112,063.93 and all accrued interest on the damage judgment, and, if he did so, the State would remit the $2,112,063.93 and interest, and the judge would then enter a new judgment for (the remaining) $2,500,000.00 in damages, as well as the aforementioned plaintiff's attorney's fees and court costs.

The consent of the federal judge pertaining to this method of handling the federal court settlement was obtained, and he was fully informed of the settlement of the state case.

On January 15, 1969, the companies and the state executed a written covenant. The oil companies agreed to pay the court costs in the state case, relinquished their right to appeal the federal case, and paid the new remitted judgment in consideration for the state giving a satisfaction of the federal case and executing a covenant to dismiss the state case. The state acknowledged in the covenant that the sum paid was in full settlement and compromise of all liability in both cases. The state also agreed to refrain from instituting, reinstating, maintaining, or prosecuting any action or proceeding growing out of the two cases which might have accrued or that was maintainable prior to January 15, 1969.

The order of remittitur and the new remitted judgment were filed on January 15, 1969. The judgment was paid and satisfaction of judgment was filed. A dismissal with prejudice was filed in the State case.

No court costs were ever paid in this state case. It is still pending against a defendant other than the three involved here.

After Appellant succeeded Blankenship in the office of Attorney General, he obtained a letter dated September 23, 1971, from Governor Hall authorizing and directing him "to bring an action to determine whether certain 'Dismissals With Prejudice' granted in the State case . . . should be vacated as being granted contrary to the laws of . . . Oklahoma." On the same date, Appellant instituted the present action (No. CD–71–677) in the Oklahoma County District Court on behalf of the State as plaintiff against the oil companies. He alleged among other things:

"(1) That the State of Oklahoma received no consideration or no sufficient legal consideration, for the granting of the purported Dismissal With Prejudice;

"(2) That the attorneys then representing the State of Oklahoma were prohibited from granting, or had no legal authority to grant, the Dismissal With Prejudice;

"(3) That the actions of the attorneys representing the State constituted actual, constructive, or legal fraud because they were prohibited from granting, or had no legal authority to grant, the Dismissal With Prejudice;

"(4) That the purported Dismissal With Prejudice be vacated and set aside as being based upon actual, constructive, or legal fraud;

"(5) That the parties hereto be returned to the respective positions occupied by them prior to the filing of the purported Dismissals With Prejudice in Case No. 169,994 to determine what indebtedness,

obligation and liability is owing to the State by the defendants."

After taking the case under advisement, the district judge filed a "Decision and Judgment" on April 18, 1972, from whose caption it appears that Case No. 169,994, supra, and the new Case No. CD–71–677, supra, had been consolidated. The trial court after determining that there was no fraud, found that the issue which was dispositive of the case was whether there was consideration for the dismissal of Case No. 169,994 with prejudice. The court made the following "conclusions of law" (among others):

"2. The agreements contained in the written covenant, to forego · appeal and to pay the judgment in the United States District Court case, constituted consideration for the dismissal of the defendants in the State court case. It was not necessary, to constitute consideration to the plaintiff, that additional money be paid to the State for such dismissal. The agreement between the parties to settle all controversies then existing, was ample consideration for the settlement of the State court case. It is fundamental that detriment to one party, as well as benefit to the other, constitutes consideration. When the defendants gave up their right to appeal, and agreed to pay the judgment in the United States District Court case, the State received consideration for dismissal of the State court case.

"5. The Attorney General had the authority and capacity to compromise the suit, which is the subject matter of this judgment, and to dismiss the case. The Court adheres to the decision in National Bank of Commerce vs. State ex rel. Garrison, County Attorney, [Okl.] 368 P.2d 997 (1962)."

The Appellant has filed the present appeal from this judgment.

Appellant asserts that legal or constructive fraud existed in the agreement between the representatives of the State and the oil companies because the agreement resulted in the oil companies obtaining a dismissal with prejudice without consideration being paid therefore in violation of the provisions of Art. V. § 53 of the Oklahoma Constitution. This section provides in pertinent part:

"* * * the Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities, or obligations of any corporation or individual, to this State, or any county or other municipal corporation thereof."

The trial court stated that "There being no contention or evidence of fraud, misrepresentation, overreaching or dishonesty, in this case, we shall proceed to consider the legal aspects which govern the controversy."

We have carefully examined the record, and are compelled to agree with the trial court. The evidence shows that all negotiations of the parties were conducted at arm's length in good faith over a substantial period of time. A full disclosure of all negotiations of the parties, including the stipulation that both the federal and state actions were to be disposed of, were made to the federal court in which the State had made its then challenged recovery.

Where fraud is charged, it becomes a question of fact, and must be proved by the party alleging the fraud. It cannot be inferred from facts which may be consistent with honesty of purpose. Davis v. Howe, 99 Okl. 118, 226 P. 316, 318 (1924). To the same extent that the court condemns a person for fraudulent conduct, it should be equally zealous in requiring proof of conduct before any condemnation. Jones v. Jones, 290 P.2d 757, 760 (Okl.1956). At law, fraud or collusion is never presumed. It must be established by clear, satisfactory and convincing evidence. Jones v. Featherston, 373 P.2d 16,

19 (Okl.1962); Noah v. Stewart, 186 Okl. 165, 96 P.2d 1034, 1037 (1939). While courts of equity have relaxed the rule of evidence whereby it suffices to show facts and circumstances from which fraud may be presumed, those facts and circumstances must be established by evidence before the presumption or inference can arise. Jones v. Jones, 290 P.2d p. 760, supra.

No proof of fraud was presented to the trial court and is therefore not a consideration on appeal.

The trial court relied on National Bank of Commerce v. State, 368 P.2d 997, 1002 (Okl.1962) in finding that the Attorney General had the authority to compromise the cases and that Art. V § 53 of the Constitution did not prohibit the settlement. This case holds that the constitutional provision is not intended to apply to a release of claims hazardous or doubtful which the state may hold against a corporation or individual, and that unliquidated claims or claims uncertain in amount may be compromised by the state at any time before final judgment.

■ The Attorney General, by statute, 74 O.S.1971 § 18 is the Chief Law Officer of the State. In the absence of explicit legislative or constitutional expression to the contrary, he possesses complete dominion over every litigation in which he properly appears in the interest of the State, whether or not there is a relator or some other nominal party. State ex rel. Nesbitt v. District Court of Mayes County, 440 P. 2d 700, 707 (Okl.1967).

■ The Attorney General has authority to bring law suits by virtue of 74 O.S. 1971 § 18b and to assume and control the prosecution thereof in the state's best interest. It must logically follow that he has authority to compromise and dismiss the suit.

If the Attorney General does not have the authority to settle and dismiss a suit brought by him on behalf of the State, then every suit must proceed to trial, re-gardless of events or considerations that might convince the Attorney General of the futility of his efforts. Needless expenditure of money and effort would result, and the State could easily find itself in a legal quagmire. The legislature has prudently refrained from limiting the State's chief legal officer in the exercise of legal judgment.

■ As an incident to the dominion the Attorney General possesses over every suit instituted in his official capacity, he has the power to dismiss, abandon, discontinue, or compromise suits brought by him either with or without a stipulation by the other party and to make any disposition of such suits as he deems best for the interest of the state. Lyle v. Luna, 65 N.M. 429, 338 P.2d 1060, 1065 (1959) (dealing with constitutional provision similar to Art. 5 § 53). See also State v. Jones, 252 Ala. 479, 41 So.2d 280, 284 (1949). State v. Finch, 128 Kan. 665, 280 P. 910, 913, 66 A.L.R. 1369 (1929).

At common law the duties of the Attorney General, as chief law officer of the realm were numerous. He was the chief legal advisor of the crown, and was intrusted with the management of all legal affairs and the prosecution of all suits, both civil and criminal in which the crown was interested. He alone, could discontinue a criminal prosecution by entering a nolle prosequi therein. (In practice this is a formal entry by the plaintiff in a civil suit or the prosecuting officer in a criminal action by which he declares he "will no further prosecute." See Blacks Law Dictionary 4th Ed.).

■ It is the general consensus of opinion that in practically every state where basis of jurisprudence is the common law, the office of Attorney General, as it existed in England, was adopted as part of the governmental machinery. In the absence of express statutory or constitutional restrictions, the common law duties and powers attach themselves to the office as far

as they are applicable and in harmony with our system of government. State v. Finch, p. 913 supra. See also State v. Young, 54 Mont. 401, 170 P. 947, 948 (1918); State v. Jones, 290 P.2d p. 284 supra; State v. Karston, 208 Ark. 703, 187 S.W.2d 327, 329 (1945); People v. New Penn Mines, Inc., 212 C.A.2d 667, 28 Cal.Rptr. 337 (1963) Cleaver v. Roberts, 203 A.2d 63, 67 (Del. 1964); People v. Daniels, 8 Ill.2d 43, 132 N.E.2d 507, 509 (1956); Matthews v. Pound, 403 S.W.2d 7, 10 (Ky.1966); Slezak, v. Ousdigian, 260 Minn. 303, 110 N. W.2d 1, 5 (1961); Kennington-Saenger Theatres v. State, 196 Miss. 841, 18 So.2d 483, 486 (1944); State v. Missouri Public Service Commission, 352 Mo. 29, 175 S.W. 2d 857, 861 (1943); State v. Public Service Commission, 129 Mont. 106, 283 P.2d 594, 599 (1955); Wilentz v. Hendrickson, 133 N.J.Eq. 447, 33 A.2d 366, 374 (1943); Mundy v. McDonald, 216 Mich. 444, 185 N.W. 877, 880 (1921); Commonwealth v. Kozlowsky, 238 Mass. 379, 131 N.E. 207 (Mass.1921); People v. Debt. Reducers, 5 Or.App. 322, 484 P.2d 869, 874 (1971); Matson v. Margiotti, 371 Pa. 188, 88 A.2d 892 (Pa Hansen v. Barlow, 23 Utah 2d 47, 456 P.2d 177, 180 (1969); State v. Moore, 46 Nev. 65, 207 P. 75, 76 (1922).

It is provided by 12 O.S.1971 § 2, which was adopted from Kansas, that the common law, as modified by constitutional and statutory law, judicial decisions and the conditions and wants of the people shall remain in force in aid of the general statutes of Oklahoma. Anderson v. Fry, 288 P.2d 1111, 1112 (Okl.1955).

We conclude, as did the Kansas court in State v. Finch, supra, that the Attorney General's powers are as broad as the common law unless restricted or modified by statute, and that his authority to dismiss, settle or compromise the litigation in question, in the absence of fraud or collusion, is undisputed.

Although Attorney General Derryberry asserted in the trial court that the attorney general lacked legal authority to compromise the state and federal cases, he now states in his brief that:

"The Attorney General does not take the position that he has no authority to compromise, settle and dismiss with prejudice a suit brought by him on behalf of the State. The Attorney General does take the position that any compromise, settlement and dismissal with prejudice of a suit brought by the Attorney General on behalf of the State must be supported by consideration. This is a universal rule applicable to private practicing attorneys and governmental attorneys alike. No attorney, whether he is the Attorney General or private practitioner, has the authority to compromise and forever release his client's claim unless there is consideration present."

The chief contention left on appeal is that Attorney General Blankenship's dismissal of the State case was without authority because the defendant oil companies gave the State no consideration for the dismissal with prejudice of the state case and that the dismissal is void.

This argument by the Appellant State is based upon a premise or hypothesis, directed only to the remitted Federal Court judgment of $2,500,000.00 (damages) which, of course, was not only a "liquidated debt" but was an "agreed" one, from which no appeal could be taken.

Wray v. Ferris, 184 Okl. 132, 85 P.2d 402 (1938), cited by appellant holds that a party who joins in and requests the particular order or judgment of the court cannot appeal the order or judgment. This is a misleading argument, because the undisputed testimony and documentary evidence shows that the Federal Court judgment, which the parties' compromise and settlement agreement was based upon, was the trial judgment of $4,612,063.93 (treble damages) which the Judge first entered in the federal case, from which defendants could have appealed. Defendants were

laying the groundwork for such an appeal with pending preliminary motions at the time the parties' negotiations resulted in a settlement agreement on January 13, 1969. The covenant signed by defense counsel, G. T. Blankenship, as Attorney General, and by the "Special Counsel" for the State, on January 15, 1969, shows that the oil companies' agreement to forbear carrying out an appeal from that judgment was a part of the consideration for the State's dismissal of the State case. There is no direct denial of this. Nor does Appellant contend that the original Federal Court judgment was final and did not constitute an unliquidated debt (see Board of County Commissioners v. Litton, 315 P.2d 239 (Okl.1957), 64 A.L.R.2d 1365, or that such forbearance to appeal therefrom was not a valid and sufficient consideration for the State's case dismissal.

■ Generally, a judgment is not final in the sense that it is conclusive upon the parties until the losing party has failed within the time allowed by law to perfect his appeal, or having properly perfected his appeal until the highest court whose decision is invoked by either party upholds the decision of the trial court. Powell v. Chastain, 359 P.2d 336 (Okl.1961); Board of County Commissioners v. Litton, 315 P. 2d p. 242 supra.

■ As a general rule where there is any benefit to promisor, or detriment to promisee, consideration exists. Prejudice suffered or agreed to be suffered other than which a person is lawfully bound to suffer at the time of consent, is sufficient consideration for the promise of another and will, in conjunction with the other essential elements of a contract impart to such promise the finding force of a contract. Powers Restaurants, Inc. v. Garrison, 465 P.2d 761, 763 (Okl.1970); Zoellner v. Graham, 204 Okl. 401, 230 P.2d 904, 906 (1951); 15 O.S.1971 § 106.

■ In the absence of fraud, duress, undue influence, or mistake, the fairness, unfairness, folly or wisdom or inequality of contracts are immaterial. Such questions are exclusively within the rights of the contracting parties to adjust at the time of entering into the contract. Johnson v. Richards, 99 Okl. 254, 226 P. 559, 560 (1924).

We agree with the trial court which stated:

" * * * In making settlement of one case, prudence would require that all controversies then existing between the parties pertaining to the same subject matter, should be settled. The law encourages the settlement of controversies, and it would be incongruous with the standards of prudent advocacy to settle part of a controversy and allow the remainder to be at issue."

"The Court does not know what impelled the then Attorney General, and special counsel for the State, to enter into an agreement for the settlement of the judgment in the United States District Court case, and the dismissal of the State court case, but in view of their being competent and ethical lawyers, it will be presumed that the motives that impelled their action, were proper and compelling ones. Experienced lawyers know that a law suit is of uncertain value, even though a non-final judgment has been recovered. Appeals are fraught with danger, and predicting the outcome is purely speculation. Perhaps the Attorney General and special counsel for the State enjoyed a peculiar insight concerning the precariousness of their late victory. Settlement of the judgment may have been the cautious route."

"Similarly, the Court is not privy to the reasons which motivated the Attorney General, and special counsel for the State, to include settlement of the State court case, by dismissal with prejudice, without additional compensation; but it will again be presumed that counsel acted judiciously and properly. The uncertainty of a law suit is a compelling rea-

son for attorneys to be willing to settle it. Since counsel had recently been through the experience of trying a conspiracy and price-fixing case against the oil companies, they may have gained experience which gave them a better insight into the tribulations they could encounter. Lawyers are ever wary of stale claims. It is conceivable that plaintiff's attorneys recognized the futility of seeking to revive claims made less vibrant with the passage of time."

■ The Attorney General had the authority to settle and compromise the case. The character of the duties pertaining to the office of Attorney General are such as call for the exercise of personal judgment based on the facts and circumstances surrounding each particular question. State v. Finch, 280 P. p. 912 supra.

■ It is settled law in this jurisdiction that where the amount of a claim is unliquidated or in good faith disputed and the interested parties agree upon a compromise, the settlement constitutes a bar to any further recovery on the claim. National Bank of Commerce v. State, 368 P. 2d 997, 1002 (Okl.1962); L.C. Jones Trucking Co. v. Jenkins, 313 P.2d 530, 533 (Okl. 1957).

■ The presence of consideration in this case is obvious. The state received $2,794,800.38. The appellees waived their right of appeal in the Federal case at a time when liability in any sum was still sharply disputed and subject to further judicial action.

■ We also find no merit to Appellant's remaining contention concerning the ineffectiveness of the dismissal of the State case for failure to pay the court costs as promised. Appellee's have tendered the payment.

Affirmed.

WILLIAMS, V. C. J., IRWIN, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., and BOX and ROMANG, Special Justices, concur.

DAVISON, C. J., and BERRY, J., having certified their disqualifications in this case, Judge DWAIN D. BOX and Judge RICHARD E. ROMANG, Court of Appeals, Division No. 1 were appointed Special Justices in their stead.