968 F.2d 20
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 MISSOURI PACIFIC RAILROAD COMPANY, Plaintiff-Appellee,
v.
CARTWRIGHT TRANSFER & STORAGE, INC. and Al Mullen,
Defendants-Appellants.
 No. 91-5008.
 United States Court of Appeals, Tenth Circuit.
 June 16, 1992.
 
 1
 Before McKAY, Chief Judge, McWILLIAMS, Circuit Judge, and EISELE*, District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 EISELE, Senior District Judge.
 
 
 4
 This action was commenced by the appellee railroad on April 15, 1985. Affirmative equitable relief was sought in the form of an order enjoining appellants from operating heavy trucks over a certain railroad crossing in Osage County, Oklahoma. One of the counterclaims filed by appellants asked the district court to quiet title to the crossing in the public and to rule that the crossing was a public crossing. This appeal is an attempt to challenge the rulings of the court below growing out of said counterclaim.
 
 
 5
 After a lengthy trial, the district court on February 10, 1989, concluded that it had diversity jurisdiction to quiet title to the crossing. It found the roadway leading up to the west side of the railroad easement to be a public highway. It declared the roadway to the east of the crossing a private road and ruled, "Thus the crossing over the railroad easement is a private crossing." The district court recognized a limited easement by prescription in favor of appellants for light farm traffic as well as passenger vehicles, but it specifically declined to broaden the scope of that easement as prayed for by appellants. The lower court's Order of February 10, 1989, noted that the appellee railroad stipulated that it would "provide and maintain a crossing suitable for heavy truck traffic" and recognized that appellants would have "the right of access to the public road via the railroad crossing for their heavy truck traffic." On February 22, 1989, the district court entered its "Judgment" that appellants "take nothing by way of their counterclaim filed herein as a result of the jury verdict rendered herein on February 9, 1989." Appellee was awarded its costs.
 
 
 6
 On May 30, 1989, appellants filed a Motion to Vacate the Order of February 10, 1989. On January 10, 1990, the Order of February 10, 1989, was amended in response to a motion by the appellee. To "eliminate any question regarding the Court's intent in two previous orders" the district court ruled:
 
 
 7
 The Order of February 10, 1989 is amended to reflect that this court gave no res judicata or other conclusive effect or basis to the Judgment of the state district court for Osage County, Oklahoma entered July 29, 1987 in the case involving this Defendant.
 
 
 8
 "The Order of June 30, 1989 is amended to reflect that the hearing on Plaintiff's motion to vacate Judgment refers only to the February 10, 1989 Order disposing of Plaintiff's quiet title action, not the Judgment of February 23, 1989 rendered on the jury verdict of February 9, 1989."
 
 
 9
 Appellants on March 2, 1990, filed an amendment to their Motion to Vacate. An evidentiary hearing was held on March 23, 1990. Thereafter additional material was submitted to the lower court. On June 13, 1990, the court entered an order denying the appellant's Amended Motion to Vacate.
 
 
 10
 The appellants in their motion had asked that the February 10, 1989 Order be vacated under Fed.R.Civ.P.Rule 60(b) for lack of subject matter jurisdiction on the ground that the Oklahoma Corporation Commission had exclusive jurisdiction to hear and determine whether a railroad crossing is public or private. The lower court ruled:
 
 
 11
 No statute cited by Plaintiffs gives exclusive jurisdiction to the commission to determine whether a crossing is in fact public. The Commission has exclusive jurisdiction to enforce the railroad's public duties at public crossings, but this neither gives the Commission exclusive jurisdiction nor divests this Court of jurisdiction to determine in the first instance whether a crossing is public. Therefore, there has been no mistake as to this Court's subject matter jurisdiction and Plaintiffs are not entitled to vacate the Court's judgment on this basis. Fed.R.Civ.P. 60(b).
 
 
 12
 Additionally appellants had contended in their Amended Motion to Vacate that the February 10, 1989, Order should be vacated under Fed.R.Civ.P. 60(b)(3), because they claimed that the appellee railroad had perpetrated a fraud on the district court in obtaining the Order declaring the crossing to be private. The district court in its June 13, 1990, Order ruled on these contentions as follows:
 
 
 13
 Plaintiffs' original Motion to Vacate contended that Defendant fraudulently procured an order dismissing it from the Osage County proceedings and then used that order to perpetrate a fraud on this Court. However, this Court has emphasized that it gave no res judicata or other conclusive effect to the Osage County judgment of July 29, 1987. (Order of Jan. 10, 1990). The Osage County judgment made no finding of fact or conclusion of law regarding whether the crossing was public or private. This Court was free to determine the public or private nature of the crossing; the Court was not somehow 'compelled' to hold the crossing private because the Osage County court took no action on the matter. Since the state court's decision had no conclusive effect on this Court's decision, any 'fraud' in procuring the decision from that court could not as a matter of law constitute a fraud on this Court. Plaintiffs are, therefore, not entitled to vacate the February 10, 1989 order on this basis.
 
 
 14
 Plaintiffs also claim that Defendant improperly concealed documents from Plaintiffs during pretrial discovery. These allegations were addressed in detail during the March 25, 1990 hearing. Additionally, the Court has reviewed the testimony of Mike Martin given during the trial of February, 1989. The Court must find that there is no basis for Plaintiffs' allegations. There is no evidence of improper concealment of documents. All of the evidence allegedly concealed was in fact available to Plaintiffs before the trial. Further, there is no evidence that Mike Martin believed the crossing was public, based upon the inventory records of the Oklahoma Department of Transportation, and lied to the Court despite such a belief. In sum, the Court can find no factual basis to support Plaintiffs' allegations of fraud upon the Court.
 
 
 15
 It therefore overruled appellant's Motion and Amended Motion to Vacate the February 10, 1989 Order.
 
 
 16
 Appellants then filed a Motion to Reconsider and requested the presiding District Judge to rescue. The Judge recused and the case was then assigned to Chief Judge Dale Cook. On November 27, 1990, Judge Cook entered an Order denying appellant's Motion to Reconsider, stating:
 
 
 17
 The Court has thoroughly reviewed the record and history of this case. On March 23, 1990 Judge Ellison conducted an evidentiary hearing on Cartwright and Mullen's allegations of fraud. After receiving and considering testimony, exhibits, briefing and arguments of counsel, Judge Ellison concluded that fraud had not been established by clear and convincing evidence.
 
 
 18
 After review of the record, this Court is in agreement with Judge Ellison that the Oklahoma Corporation Commission does not have exclusive jurisdiction over the matters raised in this proceeding and accordingly the proceeding is not rendered void.
 
 
 19
 This appeal was filed on December 27, 1990, seeking reversal of the lower court orders of June 13, 1990 and November 27, 1990.
 
 
 20
 Appellants make three arguments. They contend that the lower court erred and abused its discretion by refusing to grant them relief under Rule 60(b) on the grounds (1) that the "uncontroverted evidence" showed that exclusive jurisdiction over public crossings is vested in the Oklahoma Corporation Commission, and (2) that appellee committed fraud upon the district court below and upon the appellant's rights as found by the District Court of Orange County Oklahoma. The third contention is that the U.S. District Court abused its discretion in violation "of the Federal Rules by inadvertently providing appellee with the benefit of its discovery abuses and fraudulent concealment of its written recognition of the public crossing facts with design to improperly influence the subject matter jurisdiction and decisions of the Court below."
 
 Rule 60(b) provides in part:
 
 21
 Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void;
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 (6) any other reason justifying relief from the operation of the judgment.
 
 
 28
 The appellants here did not appeal the trial court's order of February 10, 1989, its Judgment of February 22, 1989, or its Order of January 10, 1990. The sole issue therefore is whether the trial court abused its discretion in ruling on appellants' Rule 60(b) contentions as incorporated in their Motion and Amended Motion to Vacate. The standard is clear. An abuse of discretion may be found only where the appellate court has "a definite and firm conviction that the Court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors. Union Oil Co. of Cal. v. Service Oil Co., 766 F.2d 224, 227 (6th Cir.1985).
 
 
 29
 The first challenge is to the district court's subject matter jurisdiction, i.e. to its jurisdiction to determine the status of the crossing.
 
 
 30
 First we observe that the failure to appeal the lower court's implicit findings (in its Order in February, 1989 and January, 1990) that it had subject matter jurisdiction is fatal even if the district court's finding was erroneous. Rule 60(b)(4) states that relief may be granted when "the judgment is void". The case of Nemaizer v. Baker, 793 F.2d 58 (2nd Cir.1986) explains:
 
 
 31
 We assume without deciding that appellees correctly claim that this case was improperly removed and the district court improperly exercised its jurisdiction when it 'so ordered' the stipulation. Nonetheless, the judgment entered in federal court was not void. Appellees could have moved to remand the action to state court after its improper removal to federal court, or challenged the district court's exercise of jurisdiction on direct appeal. Because they did neither, they are now barred by principles of res judicata and the interest in finality of judgments from mounting a collateral attack on a prior judgment in the present action.
 
 
 32
 In Chicot County Dist. v. Bank., 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), the Supreme Court held that a federal district court's erroneous exercise of subject matter jurisdiction is not subject to collateral attack. "The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action." Id. at 377, 60 S.Ct. at 320. Even if a court does not expressly rule on matters relating to its exercise of jurisdiction, if the parties could have challenged the court's power to hear a case, then res judicata principles serve to bar them from later challenging it collaterally. Id. at 378, 60 S.Ct. at 320. This principle was recently reaffirmed by the Supreme Court in Insurance Corp. v. Compagnie Des Bauxites, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982) ("A party that has had an opportunity to litigate the question of subject matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment."); see also Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); 11 Wright & Miller, Federal Practice and Procedure, § 2862 at 201 (1973) ("A court's determination that it has jurisdiction of the subject matter is res judicata on that issue, if the jurisdictional question actually was litigated and decided, or if a party had an opportunity to contest subject matter jurisdiction and failed to do so.").
 
 
 33
 Contrary case law and commentators' views permitting any collateral attack on a prior judgment under Rule 60(b)(4) always involve a clear usurpation of power by a district court, and not an error of law in determining whether it has jurisdiction. (Citations omitted).
 
 
 34
 Since a court has power to determine its own jurisdiction and, in fact, is required to exercise that power sua sponte, it does not plainly usurp jurisdiction when it merely commits an error in the exercise of that power. Rather, a court will be deemed to have plainly usurped jurisdiction only when there is a "total want of jurisdiction" and no arguable basis on which it could have rested a finding that it had jurisdiction. Lubben, 453 F.2d at 649. When a district court has not explicitly noted why it assumed jurisdiction over a suit, appellate courts will independently examine the record to determine whether a reasonable basis existed for the lower court's implicit finding that it had jurisdiction. See id. at 647 n. 4; Kansas City Ry., 624 F.2d at 824.
 
 
 35
 793 F.2d at 64, 65.
 
 
 36
 Here the court below did not "plainly usurp" jurisdiction over the original quiet title action. On the contrary, it appears that it had jurisdiction of that cause. True, under Oklahoma law the Corporation Commission has exclusive jurisdiction to regulate the alteration or abolition of public railroad crossings. But that Corporation Commission has no authority over private crossings. The court below was called upon to determine on the basis of the evidence whether the crossing was public or private. It concluded that it was private--thus vindicating the court's jurisdiction. Courts must of necessity determine their jurisdiction. Frequently a determination of the merits of a claim is required in order to resolve the jurisdictional question.
 
 
 37
 After Judge Ellison entered his Order of February 10, 1989, finding and concluding that the crossing was private, appellants on February 23, 1989, filed a Motion for a New Trial claiming that the Judge's determination that the crossing was private was contrary to law and the evidence. The appellee responded, identifying the evidence supporting the district court's ruling. On June 10, 1989, the lower court denied the Motion for New Trial stating:
 
 
 38
 This motion is denied. Plaintiff [Appellants] has failed to put forth any new position which the Court has not addressed. This Court's position on the evidence and the propriety of its submission to the jury as well as its jury instruction remains unchanged. The Court would direct the Plaintiffs to review its February 10, 1989 order regarding the nature of the road in question.
 
 
 39
 There was no appeal from this Order.
 
 
 40
 In the final analysis, whether the lower court had jurisdiction or not, it clearly did not "usurp" jurisdiction. The lower court did not abuse its discretion in denying Rule 60(b) relief on the ground of lack of subject matter jurisdiction.
 
 
 41
 Next appellants ask for relief from the Judgment and Order of the district court on the basis of Rule 60(b)(3) "fraud ... misrepresentation, or other misconduct of an adverse party." They contend that the lower court abused its discretion by refusing to grant such relief upon the basis of the findings and judgment of Osage County District Court. To adequately explain this contention it is necessary to review the state court proceedings at some length.
 
 
 42
 A quiet title action was filed in the Osage County District Court on October 7, 1985. The injunction claim in this federal court action had been tried on September 9 and 10, 1985, and was under advisement at the time the state action was filed. The Osage County (state) action was tried on July 23, 1987, resulting in a judgment (filed July 29, 1987) that the roadway to the west of the crossing was a public county road. However, appellee was dismissed from that action. The court reserved from its ruling any finding as to the crossing or the road east of the crossing as a result of a settlement pursuant to which appellee agreed to install and maintain a "full-depth" timber crossing at its own expense.
 
 
 43
 The instant federal case proceeded to trial before a jury on appellants' counterclaims on January 26, 1989. Since the only issues remaining at the time were those raised by the counterclaims, the lower court realigned the parties making the appellants the "plaintiffs" and the appellee the "defendant." During the trial the appellants introduced the Osage County District Court judgment and the settlement agreement. They also attempted to show that the settlement agreement was entered into because of certain fraudulent misrepresentations by appellee. Although concerned by the suggestion of fraud on the court, Judge Ellison refused to allow the fraud issues to be litigated because such alleged fraud had not been raised by appellants and preserved in the pre-trial order. This ruling was not appealed. During the trial the court made the rulings that it later incorporated into its February 10, 1989, Order and it then submitted the remaining issues to the jury which found for the appellee. Appellants filed a motion for a new trial on February 23, 1989.
 
 
 44
 On March 17, 1989, the Osage County District Attorney filed a petition in the Osage County District Court case requesting that the 1987 judgment be set aside.
 
 
 45
 On May 30, 1989, appellants filed their Motion to Vacate the federal district court's February 10, 1989 Order based upon the alleged fraudulent procurement of the 1987 judgment in Osage County state court which they contended was the basis of Judge Ellison's decision that the crossing was private.
 
 
 46
 On June 30, 1989, the district court denied appellant's Motion for a New Trial, leaving pending the Motion to Vacate.
 
 
 47
 On November 8 and December 18, 1989, the judge of the Osage County District Court held a hearing on the Motion to Vacate the 1987 judgment. On January 17, 1990 that judge found that the settlement agreement and the judgment had been induced by fraud. Additionally he found that the 1987 judgment had been used to "mislead" Judge Ellison with regard to the issues in this case. The Osage County District Court's decision of January 17, 1990, was appealed. More on that later.
 
 
 48
 An evidentiary hearing was held on March 23, 1990, by Judge Ellison on appellants' Motion and Amended Motion to Vacate. Following the hearing additional material was submitted to the district court including the entire transcript of the Osage County District Court trial. In its Order of June 13, 1990, the lower court stated, inter alia, "In sum, the Court can find no factual basis to support plaintiff's allegations of fraud upon the Court." The evidentiary record fully supports the findings in Judge Ellison's Order. The district court did not abuse its discretion in denying appellant's Rule 60(b)(3) Motion to Vacate on the basis of fraud.
 
 
 49
 It is important to note that the Osage County District Court's decision of January 17, 1990, was reversed by the Oklahoma Court of Appeals on December 3, 1991, in a "Summary Opinion" which states, inter alia:
 
 
 50
 This appeal arises from an order vacating a judgment of dismissal that had been entered pursuant to a settlement between the Plaintiff, Board of County Commissioners of Osage County, and Defendant, Missouri-Pacific Railroad. The trial court found that the settlement and dismissal had been obtained by Railroad's fraud....
 
 
 51
 * * *
 
 
 52
 * * *
 
 
 53
 Additionally, the County contended that the dismissal/settlement had been used in a related federal court case to mislead the federal court in deciding the rights of the parties to use the crossing.
 
 
 54
 * * *
 
 
 55
 * * *
 
 
 56
 With regard to the particular errors raised by Railroad, we find merit in their proposition that the evidence was not clear and convincing that counsel for Railroad concealed facts or otherwise misled counsel for the County in effecting the settlement/dismissal. Assuming that Railroad knew about the inventory of railroad crossings or that it should have been charged with constructive knowledge of that inventory, there is no dispute that the inventory was a public record that counsel for the County could have discovered with reasonable diligence. More importantly, however, the inventory is not conclusive proof that the crossing in question was a 'public' crossing. The status of the crossing was an issue about which there was a bona fide dispute both in the state district court below and the federal district court. There had never been any judicial or regulatory determination concerning the crossing that precluded Railroad from having the public versus private status determined in those proceedings. Stated another way, Railroad and other parties were free to litigate or settle their rights on this issue.
 
 
 57
 The settlement secured the public's right to use the crossing in question....
 
 
 58
 * * *
 
 
 59
 * * *
 
 
 60
 Additionally, State ex rel. Derryberry v. Kerr-McGee Corp., 516 P.2d 813 (Okla.1973), dictates that settlements of the public's rights by the legal officers with authority to do so are to be upheld, particularly where the allegations of fraud advanced to attack the agreement are not established by clear, satisfactory and convincing evidence.
 
 
 61
 Accordingly, the trial court's order vacating the dismissal and permitting further litigation of the compromised issue is reversed and remanded with directions to enforce the settlement agreement.
 
 
 62
 Osage County, Oklahoma v. Missouri Pacific Railroad, No. 74,858, slip op. at 1-4, (Oklahoma Court of Appeals, December 3, 1991)
 
 
 63
 In the light of the record the appellants' remaining contention borders on the frivolous. They argue that the court below abused its discretion in denying Rule 60(b) relief by "inadvertently provid[ing] MoPac with the benefit of its fraudulent concealment" (Appellants' Brief p. 40) of certain railroad facts and records relating to the status of the crossing. It is asserted that the appellee "abused discovery in 1985 and thereafter by not producing such records or the later purported private crossing records in response Mullen's Rule 30(b)(6) Deposition Notice." (Appellants' Brief p. 39). The lower court is said to have "impliedly" precluded "clear evidence of scheme of fraud on the court." There is nothing in the record to support such assertion. Furthermore, there is no evidence of fraudulent concealment of evidence. It does not appear that any of the records or documents were sought by appellants through discovery or order of the court. As stated in H.K. Porter Co. v. Goodyear Tire & Rubber Co. 536 F.2d 1115, 1118 (6th Cir.1976), "Allegations of nondisclosure during pretrial discovery are not sufficient to support an action for fraud on the court." This circuit has followed Porter. See Bulloch v. U.S. 721 F2d 713, 718 (10th Cir.1983). And in Kerwit Medical Products v. N. & H. Instruments 616 F2d 833 (5th Cir.1980) we note the following language:
 
 
 64
 We need only cite the well-settled rule that the mere nondisclosure to an adverse party and to the court of the facts pertinent to a controversy before the court does not add up to a "fraud upon the court" for purposes of vacating a judgment under Rule 60(b) [cites omitted].
 
 
 65
 Id. at 837. As stated, appellants made no Rule 34 motion for the production of the documents. It can only point to the "Notice to Take Deposition" filed in May, 1985, which is inadequate on its face. Furthermore, no request was made for any order to produce any of the documents referred to therein.
 
 
 66
 Appellants here did nothing for over four years while in the trial court to identify and obtain copies of the desired documents and records. The appellants' claim of fraud based upon the non-production of documents and records must fail.
 
 
 67
 We conclude that the lower court did not abuse its discretion in denying appellants' Motion to Vacate, Amended Motion to Vacate and Motion to Reconsider.[1]
 
 
 68
 AFFIRMED.
 
 
 
 *
 Honorable G. Thomas Eisele, United States Senior District Judge for the Eastern District of Arkansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purposes of establishing the doctrines of law of the case, res judicata or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Counsel for appellants has supplemented the record by filing a copy of an "Order Determining Crossing No. 797-2897 in Osage County To Be a Public Crossing" entered by Corporation Commission of the State of Oklahoma on September 16, 1991. We permit the filing of this "supplemental authority" but conclude that it has no effect on any of the issues raised in this appeal