2011 OK 88

**GOVERNMENT EMPLOYEES INSURANCE COMPANY,**
Plaintiff,

v.

**Jeffery QUINE, Tracie Quine, and Amanda Watkins,**
Defendants.

No. 107,876.

Supreme Court of Oklahoma.

Oct. 25, 2011.

Gerard F. Pignato, Clayton B. Bruner, Pignato, Cooper, Kolker & Roberson, Oklahoma City, OK, for the Plaintiffs.

Kenneth G. Cole, Mark A. Engel, Steven S. Mansell, Mansell, Engel & Cole, Oklahoma City, OK, for the Defendants.

Michael Burrage, Simon Gosnell Fulmer, Carin L. Marcussen, Rex Travis, Whitten & Burrage and Travis Law Office, Oklahoma City, OK, for the Oklahoma Association for Justice, amicus curiae.

Thomas D. Hird, Richards & Connor, Tulsa, OK, for the Oklahoma Association of Defense Counsel, amicus curiae.

GURICH, J.

■ ¶ 1 The United States District Court for the Western District of Oklahoma certified a single question of Oklahoma law under the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001 §§ 1601–1611.[1] We have reformulated the question presented by the federal court as follows:

> Does an insurer's refusal to unconditionally tender partial payment of UIM benefits amount to a breach of the obligation to act in good faith and deal fairly when (1) the insured's economic/special damages have been fully recovered through tortfeasor's liability insurance; (2) the insurer promptly investigates and places a value on the claim; (3) there is a legitimate dispute regarding insured's noneconomic/general damages; and (4) benefits due have not been firmly established?

Based on the facts before us and following the doctrine of stare decisis, we answer the certified legal question in the negative.

### Facts and Procedural History

#### Pre-litigation

¶ 2 Jeffery A. Quine was the holder of an automobile insurance policy ("the policy"), issued by GEICO. Coverage under the policy included UM and UIM benefits with limits of $100,000 per person and $300,000 per occurrence.

¶ 3 On November 19, 2005, Amanda Watkins ("Watkins") was involved in a three-car accident where she suffered personal inju-

---

**1.** As noted by Judge Cauthron, Title 20 O.S.2001 § 1602.1 authorizes this Court to reformulate a certified question of law. Because the tortfeasor tendered payment exceeding Amanda Watkins' economic/special damages, we have modified the certified question to fit the specific facts presented.

ries. Watkins was a fault-free passenger riding in a vehicle driven by her mother, Tracie Quine. She was a minor child at the time of the wreck. Medical bills for her injuries totaled $9,904.05. The facts submitted by the federal court reflect that the only economic or out of pocket damages incurred by Watkins were for medical expenses.[2] GEICO did not dispute that the policy provided UIM benefit coverage for Watkins.

¶ 4 Multiple parties were injured in the car accident. Consequently, the tortfeasor's liability insurance policy was insufficient to satisfy all of the claims asserted. Nevertheless, Watkins settled her personal injury claim with the tortfeasor for the sum of $13,890. GEICO was notified of the settlement amount and agreed to waive its subrogation rights. In August of 2007, the tortfeasor's insurance carrier paid Watkins $13,890.

¶ 5 On May 1, 2008, Watkins' attorney sent GEICO a demand letter, seeking payment of the $100,000 UIM limits under the policy. GEICO responded by offering $6,014.05, conditioned upon Watkins' execution of a full and complete release of any additional payment. Watkins refused this amount. On September 10, 2008, the insurer increased its offer to $8,014.05. As with the original settlement proposal, the UIM claim was contingent upon releasing GEICO from any further obligation to pay insurance proceeds. This amount was also refused by Watkins. Finally, on September 15, 2008, GEICO proposed a settlement figure of $11,014.05 to resolve Watkins' UIM claim. The offer again required Watkins to sign a full and complete release of all UIM claims. Watkins once more declined the offer by GEICO.

¶ 6 GEICO's initial evaluation of the UIM matter occurred in May 2008 after it received the first settlement demand from Watkins' attorney. A second evaluation took place after GEICO received Watkins' medical records. In accordance with the policy, GEICO arranged for a medical examination of Watkins by a physician of their choosing. The insurer conducted a final assessment of the UIM claim after receiving a report from the doctor. GEICO's financial appraisal of the UIM claim was based solely on Watkins' status as an underinsured motorist. The range of values placed on the claim only included Watkins' damages for personal injuries; it did not include any factors outside of the UIM benefits, such as litigation costs, expense associated with defending against suit, attorney fees, or other amounts. In the end, GEICO determined Watkins' UIM claim had a value between $6,014.05 and $11,014.05.

¶ 7 When the parties were unable to reach a full and complete resolution of the UIM claim, Watkins' attorney presented a demand, seeking an unconditional tender of the "undisputed amount" of benefits under the policy. In the demand, no specific dollar figure was identified by Watkins' attorney as representative of the "undisputed amount." GEICO rejected this proposal and responded by denying that it had any obligation to pay UIM benefits in advance without a complete release from Watkins. Nothing in GEICO's written insurance policy expressly required, allowed, or prohibited the insurer from withholding payment of UM or UIM benefits to its insured until the insured agreed with the company's evaluation and executed a full and complete release for any sums exceeding its evaluation.[3] Additionally, nothing in the written insurance policy expressly required,

---

**2.** Economic or special damages have been defined as those which can either be assigned an exact dollar figure or calculated with reasonable mathematical certainty (medical bills, lost income, etc.). 25 C.J.S. Damages, § 3 (2011) (footnotes omitted). Noneconomic or general damages include elements which cannot be fixed with an exact monetary amount (pain and suffering, physical impairment, disfigurement, etc.). *Id.* We also note the definition of such damage elements as defined in 23 O.S.Supp.2009 § 61.2. Although this statutory section was not in effect at the time of Watkins' injuries, we find the consistent definitions persuasive.

**3.** Prior to April of 2009, GEICO's internal claim practice did not require unconditional partial payments of UM or UIM proceeds to its insureds unless a claimant accepted the company's valuation and signed an absolute written release. New GEICO protocol directs adjusters to pay medical bills or lost wages on UM claims based on the company's valuation with or without a written release. Additionally, GEICO will now compensate an insured for UIM benefits, without a complete settlement and signed release, if the claimant's recovery from a tortfeasor is less than the uncontested medical bills or lost wages. (Order Certifying Questions of Law, at 4).

allowed, or prohibited GEICO from refusing payment of benefits until an insured had agreed with the overall evaluation of a UM or UIM claim. According to GEICO, its duty under the policy was to assemble available information and to place a value on Watkins' UIM claim.

### Post-litigation

¶ 8 On October 24, 2008, GEICO filed a declaratory judgment action against defendants Jeffery Quine, Tracie Quine, and Amanda Watkins in the United States District Court for the Western District of Oklahoma, *GEICO v. Quine, et al.*, Case No. CIV–08–1140–C. GEICO asked the federal court to enter an order determining that "neither GEICO's insurance policy nor Oklahoma law require[d] GEICO to pay to its insured what she has referred to as the 'undisputed amount.'" (Complaint, Doc. 1, Oct. 24, 2008).

¶ 9 Watkins filed an Answer to the Complaint on November 14, 2008. Included in the Answer was a counterclaim, charging GEICO with breach of its duty to act in good faith and deal fairly "by intentionally delaying and refusing to pay any UM/UIM benefits to or on behalf of Amanda Watkins … when Plaintiff knew that there was no legitimate argument as to the underinsured status of the tortfeasor." (Answer, Doc. 10, Nov. 14, 2008) (emphasis omitted).

### Summary of the arguments

¶ 10 GEICO denied that any part of Watkins' UIM claim was "undisputed." While GEICO recognized Watkins' medical bills of $9,904.05 as "uncontested," the company also maintained that a jury could logically enter a verdict between $9,904.05 (the amount of Watkins' medical bills) and $13,890.00 (the settlement figure paid by tortfeasor's insurer). GEICO believed that its evaluation of Watkins' UIM losses were incapable of absolute precision as a jury could find (1) the damages suffered by Watkins were within the range of values given the claim; or (2) the damages were greater or less than the evaluation amounts.

¶ 11 Although Watkins' attorney generically demanded payment of the "undisputed amount" of UIM benefits, she contends this was only done because counsel was unaware of what figures GEICO had included in their evaluations and offers. Further, Watkins maintained that the "undisputed amount" owed by GEICO should have been considered the lowest dollar figure within its UIM evaluation range. Watkins argued that GEICO was obligated under Oklahoma law to both evaluate her losses and promptly pay UIM benefits. This duty, according to the insured, extended to economic as well as noneconomic damages.

¶ 12 As of the date of the Order Certifying Questions of Law to the Oklahoma Supreme Court, no payment had been made to Watkins by GEICO.

### Analysis

¶ 13 Unresolved questions of law may be answered by this Court if certified questions are presented in accordance with the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001 §§ 1601–1611. Title 20 O.S. 2001 § 1602 outlines the discretionary power afforded this Court under the Act:

> The Supreme Court … may answer a question of law certified to it by a court of the United States … if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state.

Thus, in assessing whether a certified federal question of law should be answered by this Court, both statutory queries must be addressed. First, would resolution of the uncertainty dispose of an issue in the federal court litigation? Second, is there established and controlling law on the subject matter? [4]

---

4. We have previously declined to answer a certified federal question based on the existence of controlling precedent. *Scottsdale Ins. Co. v. Tolliver,* 2005 OK 93, ¶¶ 4, 16, 127 P.3d 611, 612, 615. *But see Hamilton By and Through Hamil-* ton v. Vaden, 1986 OK 36, ¶ 6, 721 P.2d 412, 414–415 (answering certified question under section 1602 based on prior decision involving precise legal/factual issue).

¶ 14 This Court is obligated to consider only those facts enumerated in the certification order. *McQueen, Rains & Tresch, LLP v. Citgo Petroleum Corp.*, 2008 OK 66, ¶ 2, n. 4, 195 P.3d 35, 38. When addressing a certified question under 20 O.S. 2001 § 1602, we are constrained by those facts presented, and our examination is confined to resolving legal issues. *Russell v. Chase Inv. Servs. Corp.*, 2009 OK 22, ¶ 8, 212 P.3d 1178, 1181. Because the factual scenario and legal issues presented in this matter are remarkably similar to an earlier case decided by this Court, we apply the doctrine of stare decisis to answer the certified question in the negative.[5]

¶ 15 We first recognized tortious conduct stemming from an insurer's breach of the implicit duty to act in good faith and deal fairly with its insured in the case of *Christian v. American Home Assurance Co.*, 1977 OK 141, ¶ 25, 577 P.2d 899, 905. By adopting this new legal tenet, however, this Court did not eliminate the insurer's right to resolve disputes in a judicial forum.[6] Since Christian, our decisions have consistently recognized an insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute. *See Brown v. Patel*, 2007 OK 16, ¶ 26, 157 P.3d 117, 126–127; *Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 16, 998 P.2d 1219, 1223; *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, ¶ 14, 681 P.2d 760, 762. Whether or not an insurer has breached its duty to act in good faith and deal fairly is dependent upon the particular facts and circumstances in each case.

¶ 16 As GEICO points out in its answer brief, the scenario faced by this Court in *Garnett v. GEICO*, 2008 OK 43, 186 P.3d 935, is "almost directly on point" with the details surrounding Watkins' claim. (GEICO's Answer Brief, at 4). In Garnett, we considered whether an insurer had breached its duty by failing to promptly tender what the insured perceived as an "undisputed amount" of UIM benefits. *Id.* ¶ 20, 186 P.3d at 943. The particular facts of that case reveal Mr. Garnett suffered personal injuries when the vehicle in which he was riding as a passenger was struck by another car. Medical expenses and lost wages for Mr. Garnett totaled roughly $7,200. GEICO insured both drivers at the time of the accident, and claims were presented for both liability and UIM coverage.[7] The adjuster responsible for handling liability claims against the tortfeasor offered Mr. Garnett $8,700 to resolve the matter. The UIM adjuster conducted an evaluation of the UIM demand and estimated total damages between $11,000 and $13,000. Mr. Garnett settled his dispute against the tortfeasor by accepting the $10,000 policy limits. Ultimately, the UIM adjuster offered Mr. Garnett the top amount of the evaluation, or $3,000, subject to his execution of a release.

¶ 17 Mr. Garnett declined to accept GEICO's offer, believing his UIM claim was valued between $13,000 and $15,000. Instead he demanded that GEICO immediately tender the $3,000 offer as an "undisputed amount" due. GEICO refused to pay the $3,000 without a release, and a lawsuit followed. The petition alleged that GEICO act-

---

**5.** "Stare decisis should be more than a fine sounding phrase. This is especially true for us, because unless we respect ... the decisions of this Court we can hardly expect that others will do so. Accordingly, a substantial departure from precedent can only be justified ... in the light of experience with the application of the rule to be abandoned or in the light of an altered historic environment...." *Phillips v. Okla. Tax Comm'n*, 1978 OK 34, ¶ 48, 577 P.2d 1278, 1285–1286 (citations omitted).

**6.** "We do not hold that an insurer who resists and litigates a claim made by its insured does so at its peril that if it loses the suit or suffers a judgment against it for a larger amount than it had offered in payment, it will be held to have breached its duty to act fairly and in good faith

and thus be liable in tort. We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit." *Christian*, ¶¶ 25–26, 577 P.2d at 904–905.

**7.** Mr. Garnett also alleged GEICO adjusters had engaged in bad faith "dual representation" by conferring and colluding on the two separate claims. *Garnett*, ¶ 24, 186 P.3d at 944. This circumstance is not present in the instant matter; however, the distinction does not render Garnett any less persuasive.

ed in bad faith and breached the UM/UIM insurance contract. The trial court sustained a motion for summary judgment and concluded GEICO had not breach its duty to act in good faith and deal fairly, leaving only the insured's contract dispute for trial. After submission of the matter to a jury, a verdict was entered in favor of Mr. Garnett for $15,000, thereby obligating GEICO to pay $5,000 of UIM benefits. On appeal, the Court of Civil Appeals affirmed the order granting summary judgment on the issue of bad faith. We granted certiorari to consider whether GEICO's refusal to unconditionally tender the $3,000 as an alleged "undisputed amount constituted bad faith." *Id.* ¶ 23, 186 P.3d at 944.

¶ 18 Under the circumstances in *Garnett*, we determined that a legitimate dispute existed as to the value of the insured's UIM claim. Accordingly, summary judgment was an appropriate means of disposing of any action predicated on GEICO's alleged failure to tender an "undisputed amount." *Id.* Several fundamental principles were emphasized in reaching our decision in *Garnett*:

> The essence of the tort is the unreasonable, bad-faith conduct of the insurer. A central issue is whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are alleged to be violative of the duty of good faith and fair dealing. Before the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law,

under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious. It is not a breach of the duty of good faith for an insurer to resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim. (citations & footnotes omitted).

*Id.* ¶ 22, 186 P.3d at 944.[8]

¶ 19 In the present case, as in *Garnett*, Watkins received compensation from the tortfeasor's insurer in excess of her economic/special damages. GEICO, through its evaluation, determined that Watkins was entitled to some amount of UIM benefits under the GEICO policy for the noneconomic/general damage element of her claim. The distinction between these two damage elements is especially germane under the facts of this case. The parties could not agree on an appropriate value for Watkins' general damage claim; thus, a legitimate dispute arose. GEICO's refusal to issue an advance payment on Watkins' UIM claim presents a scenario far different than one involving a request for partial payment needed to satisfy unpaid medical expenses, lost wages, or other economic/special damages—cases where the impact of the loss is direct, immediate, and measurable with reasonable certainty.[9] *See, e.g., Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 233 P.3d 1221, 1229–1231, 1241 (2010) (finding sufficient evidence to support bad faith verdict where insurer unreasonably delayed payment of UM proceeds for unpaid medical bills).[10] The only

---

8. Other jurisdictions have likewise declined to impose liability on an insurer for failing to make partial or advance payment of UIM or UM claims. *See, e.g., Zappile v. Amex Assur. Co.*, 928 A.2d 251, 257 (Pa.Super.Ct.2007) (Pennsylvania law does not require insurers to engage in piecemeal settlement through partial payment of lost wage component of UIM claim); *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 887 (Pa.Super.Ct.2000) (concluding that settlement offers or reserves set aside for insureds' claims do not equate to "undisputed amounts" of benefits due under a policy); *LeFevre v. Westberry*, 590 So.2d 154, 161–162 (Ala.1991) (holding an insurer does not act in bad faith when a legitimate dispute exists over the amount of damages and failing to issue advance payments is not a breach of insurers duty); *Voland v. Farmers Ins. Co.*, 189 Ariz. 448, 943 P.2d 808, 810 (Ariz.Ct. App.1997) (implied covenant of good faith and

fair dealing does not require an insurer to pay undisputed amounts to its insured prior to execution of a release or judgment establishing the amount due).

9. GEICO concedes in its brief that an insurer might have a duty to issue a partial distribution of benefits without securing a release in some scenarios.

10. Mrs. Weinstein and her daughter were injured in an automobile accident with an uninsured motorist. The Weinsteins were insured through a policy that provided both UM and MedPay coverages. After significant medical bills had accumulated and MedPay benefits were exhausted, collection agencies and health care providers began contacting the family in an effort to obtain payment on the outstanding debt. According to the Weinsteins, the insurer's refusal to advance

portion of her claim remaining after payment from the tortfeasor were those indeterminate sums attributable to general damages, and accordingly, the facts of this case are governed by our prior decision.

### Conclusion

¶ 20 Adhering to the rule of law announced in *Garnett v. GEICO,* and utilizing the guiding principle of stare decisis, we conclude that an insurer's refusal to unconditionally tender a partial payment of UIM benefits does not amount to a breach of the obligation to act in good faith and deal fairly when: (1) the insured's economic/special damages have been fully recovered through payment from the tortfeasor's liability insurance; (2) after receiving notice that the tortfeasor's liability coverage has been exhausted due to multiple claims, the UIM insurer promptly investigates and places a value on the claim; (3) there is a legitimate dispute regarding the amount of noneconomic/general damages suffered by the insured; and (4) the benefits due and payable have not been firmly established by either an agreement of the parties or entry of a judgment substantiating the insured's damages.

**REFORMULATED CERTIFIED QUESTION ANSWERED**

TAYLOR, C.J., COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, GURICH, JJ., Concur.

REIF and COMBS, JJ., Dissent.

partial amounts of UM benefits in satisfaction of the unpaid bills resulted in damage to their cred-

it and caused embarrassment, stress, and depression. *Weinstein,* 233 P.3d at 1230.