CHEROKEE NATION v. UNITED STATES DEPARTMENT OF THE INTERIOR
2025 OK 4
Case Number: 122108
Decided: 01/22/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 4, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

THE CHEROKEE NATION, a federally recognized Indian Tribe, 17675 S. Muskogee Ave. Tahlequah, OK 74464,

THE CHICKASAW NATION, a federally recognized Indian Tribe, 520 E. Arlington St. Ada, OK 74820,

THE CHOCTAW NATION a federally recognized Indian Tribe, 1802 Chukka Hina Dr. Durant, OK 74701, and

THE CITIZEN POTAWATOMI NATION, a federally recognized Indian Tribe, 1601 S. Gordon Cooper Dr. Shawnee, OK 74801, Plaintiffs,
v.
UNITED STATES DEPARTMENT OF THE INTERIOR, DAVID BERNHARDT, in his official capacity as the Secretary of the Interior, TARA KATUK MAC LEAN SWEENEY, in her official capacity as the Assistant Secretary of the Interior -- Indian Affairs, United States Department of the Interior, 1849 C Street N.W. Washington, DC 20240,

J. KEVIN STITT, in his official capacity as the Governor of the State of Oklahoma, 2300 N. Lincoln Blvd. #212 Oklahoma City, OK 73105,

WILLIAM NELSON, SR., in his official capacity as the Chairman of the Business Committee of the Comanche Nation, 584 NW Bingo Rd. Lawton, OK 73507,

JOHN R. SHOTTON, in his official capacity as the Chairman of the Tribal Council of the Otoe-Missouria Tribe of Indians 8151 Hwy 177 Red Rock, OK 74651,

JOE BUNCH, in his official capacity as the Chief of the United Keetoowah Band of Cherokee Indians in Oklahoma 18263 Keetoowah Cir. Tahlequah, OK 74464, and

BRIAN GIVENS, in his official capacity as the Mekko of the Kialegee Tribal Town 100 Kialegee Dr. Wetumka, OK 74883, Defendants,
and
GENTNER DRUMMOND, in his official capacity as the Attorney General of the State of Oklahoma, Real Party in Interest.

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT 
COURT FOR THE DISTRICT OF COLUMBIA

¶0 The United States District Court for the District of Columbia certified a question of state law to the Court pursuant to the revised Uniform Certification of Questions of Law Act, 20 O.S. 2011 §§ 1601-1611.

CERTIFIED QUESTION ANSWERED

Colin Cloud Hampson and Frank Sharp Holleman, IV, Sonosky, Chambers, Sachse, En-Dreson & Perry, LLP, Bonita, California, for Plaintiffs Cherokee Nation, Chickasaw Nation, Choctaw Nation, and Citizen Potawatomi Nation

Chad C. Harsha, Cherokee Nation-Attorney General Office, Tahlequah, Oklahoma, for Plaintiff Cherokee Nation

Meredith Presley Turpin, Chickasaw Nation, Office of Executive Counsel, Ada, Oklahoma, for Plaintiff Chickasaw Nation

Stephen Greetham, Greetham Law, PLLC, Oklahoma City, Oklahoma, for Plaintiff Chickasaw Nation

Brian Danker, Durant, Oklahoma, for Plaintiff Choctaw Nation

Kristofor R. Swanson and Matthew M. Marinelli, U.S. Department of Justice, DOJ-ENRD, Natural Resources Section, Washington, DC, for Defendant United States Department of Interior

Phillip G. Whaley, Daniel G. Webber, Jr., Matthew C. Kane, and Patrick R. Pearce, Jr., Ryan Whaley, Oklahoma City, Oklahoma, for Defendant Governor J. Kevin Stitt

Jeffrey B. Wall and Judson O. Littleton, Sullivan & Cromwell LLP, Washington, DC, for Defendant Governor J. Kevin Stitt

Gentner Drummond, Garry M. Gaskins, II, Kyle Peppler, and William Flanagan, Office of the Attorney General, State of Oklahoma, for Defendant State of Oklahoma

DARBY, J.

¶1 The United States District Court for the District of Columbia certified the following question of state law to this Court under the Revised Uniform Certification of Questions of Law Act, 20 O.S. §§ 1601-1611.

May the Attorney General of Oklahoma, under Title 74, Section 18 of the Oklahoma Statutes, "take and assume control" of the "defense of the state's interests," Okla. Stat. tit 74 § 18b(A)(3), in the instant case before this Court -- in which the Governor of Oklahoma is named as a defendant in his official capacity for his role in entering into certain tribal-gaming contracts on behalf of the State of Oklahoma -- over the objection of the Governor, who is vested with "Supreme executive power" under Article VI, Section 2 of the Oklahoma Constitution, and when the Governor has already exercised his authority under Title 74, Section 6 of the Oklahoma Statutes to "employ counsel to protect the rights or interests of the state," Okla. Stat. tit 74 § 6?

¶2 The certified question is answered in the negative.

I. CERTIFIED FACTS AND PROCEDURAL HISTORY

¶3 The underlying facts of this case are set out in the federal court's certification order. In answering a certified question, this Court will not presume facts outside those offered by the certification order. See Siloam Springs Hotel, LLC v. Century Surety Co., 2017 OK 14392 P.3d 262Howard v. Zimmer, Inc., 2013 OK 17299 P.3d 463In re Harris, 2002 OK 3549 P.3d 710Jones v. Univ. of Cent. Okla., 1995 OK 138910 P.2d 987Siloam Springs, 2017 OK 14Howard, 2013 OK 17In re Harris, 2002 OK 35

¶4 The underlying case is about the validity of certain tribal-gaming compacts for casino operations in Oklahoma entered into under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §2701 et seq. In August 2020, four Native American tribes (Plaintiff tribes) brought the underlying action in federal court seeking to invalidate the compacts at issue which were entered into by Governor J. Kevin Stitt and four other Native American tribes. The Plaintiff tribes each operate casinos in Oklahoma. The compacts at issue were submitted to the U.S. Secretary of the Department of the Interior for approval and were approved by operation of law. In their federal lawsuit, the Plaintiff tribes seek review and reversal of this approval. They maintain that the new compacts were not lawfully entered into by the Governor and violated Oklahoma law, and that by executing these compacts the Governor has played a role in violating their rights under the IGRA.

¶5 The Governor has been represented by private retained counsel since the lawsuit began, pursuant to Section 6 of Title 74, which authorizes the Governor "to employ counsel to protect the rights or interests of the state." The Governor filed his first answer in January 2021, and filed an answer to the operative complaint in October 2021, in his official capacity as Governor of the State of Oklahoma and for the State of Oklahoma as the real party in interest.

¶6 In July 2023, two and one-half years after the Governor filed his first answer, the Attorney General of Oklahoma filed a five-page Notice of Appearance in the federal case, asserting that pursuant to Section 18b(A)(3) of Title 74,Id. at 1443 (citing Treat v. Stitt, 2020 OK 64473 P.3d 43Treat v. Stitt, 2021 OK 3481 P.3d 240

¶7 The Governor filed a motion to strike the Attorney General's and Solicitor General's appearances and argued that the Attorney General does not have statutory authority to replace counsel already hired by the Governor. The Governor pointed out that Oklahoma law authorizes him to "employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced." 74 O.S. 2011, § 6

II. PROCEDURE AND REQUIREMENTS FOR ANSWERING CERTIFIED QUESTIONS

¶8 This Court is authorized to answer unresolved questions of law if certified in accordance with the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2021, §§ 1601-1611. See Siloam Springs, supra, 2017 OK 14Gov't Employees Ins. Co. v. Quine, 2011 OK 88264 P.3d 124520 O.S. 2021, § 1602Siloam Springs, 2017 OK 14Quine, 2011 OK 88

¶9 Both requirements in Section 1602 are satisfied here. First, answering the certified question would clearly be determinative of a pending issue in the underlying case -- whether the federal court should strike the appearance of the Attorney General. Second, the certified question presents an issue of first impression for which there is no controlling Oklahoma precedent.

III. ADDITIONAL BACKGROUND

A. The Litigation History of the Gaming Compacts at Issue - Treat I, Treat II, and IGRA

¶10 Oklahoma's State-Tribal Gaming Act (the Act) provides the terms and conditions under which the State's federally recognized tribes can engage in Class III gaming on tribal land through compacts. 3A O.S. Supp. 2018 §§ 261-282. The Act is "game-specific" and prohibits certain house-banked card, dice, and table games, as well as event wagering. 3A O.S. Supp. 2018, § 2623A O.S. Supp. 2018, § 280.13A O.S. Supp. 2012, § 281

¶11 Under this legal framework, this Court previously declared that two of the tribal gaming compacts at issue -- those entered into between the Governor and the Comanche and Otoe-Missouria Tribes -- were invalid under Oklahoma law because the gaming compacts authorized certain forms of Class III gaming prohibited by state law. Treat v. Stitt, 2020 OK 64473 P.3d 43Treat I]. While Treat I was pending before this Court, the Governor entered into two more gaming compacts with the United Keetoowah Band of Cherokee Indians (UKB) and the Kialegee Tribal Town (KTT). This Court subsequently ruled that those two compacts were also invalid under Oklahoma law because they contained terms different from the Model Compact authorized by statute and were not approved by the Joint Committee. Treat v. Stitt, 2021 OK 3481 P.3d 240Treat II].

¶12 While the Treat I and Treat II cases dealt with the compacts under Oklahoma law, the underlying case in the D.C. District Court involves the federal procedures governing the tribal gaming compacts. After a state and an Indian tribe have entered into a gaming compact, the next part of the process involves the federal IGRA, under which the compact is submitted to the Secretary of the Interior for approval. 25 U.S.C. §§ 2710(d)(3)(B), 2710(d)(8).

¶13 The Plaintiff tribes challenge the status of the compacts under the federal law, asserting that their various defects under Oklahoma law preclude the Secretary's "no action" approval. The Plaintiff tribes seek declaratory relief setting aside the Secretary's approval of all four compacts. See First Amended and Supplemented Complaint; Rec. at 509, et seq.

¶14 Governor Stitt selected and retained his own counsel who has represented the Governor in defending the federal case since January 2021. In his defense, Governor Stitt has maintained that the approval of the compacts remains valid under the federal IGRA, and that any provisions which were subsequently determined to violate state law can be severed. The Governor asserts that a compact which has already taken effect under federal law cannot be rendered invalid as a result of later disputes under state law. See Memorandum of Law in Support of Defendant Governor J. Kevin Stitt's Rule 12(C) Motion, ECF # 154 and 154-1 at 18-21, Rec. at 1376-79. As these issues unfold in the underlying case, the Attorney General now seeks to appear on behalf of the Governor and the State.

B. The Governor and the Attorney General Both Possess Statutory Authority Regarding Representation of the State's Interests in Litigation 

¶15 Section 18c of Title 74 sets up Oklahoma's overall approach regarding the employment of attorneys by state officers, boards, and commissions. Under this statute, state entities are generally prohibited from employing or appointing attorneys, and instead the duties of legal representation are vested in the Attorney General. The statute, however, also provides several exceptions to this general pronouncement, and it specifically authorizes the Governor "to employ special counsel to protect the rights or interest of the state." 74 O.S. Supp. 2019, § 18c

A. 1. Except as otherwise provided by this subsection, no state officer, board or commission shall have authority to employ or appoint attorneys to advise or represent said officer, board or commission in any matter.

. . . .

4. All the legal duties of such officer, board or commission shall devolve upon and are hereby vested in the Attorney General; provided that:

a. the Governor shall have authority to employ special counsel to protect the rights or interest of the state as provided in Section 6 of this title, . . .

74 O.S. Supp. 2019, § 18c

¶16 Section 6 of Title 74, which is referenced in Section 18c(4)(a), specifies that the Governor has the power to retain independent legal counsel in cases involving interests of the State, and to direct the activities of his employed counsel. Section 6 states as follows:

The Governor shall have power to employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced, and the counsel so employed by him may, under the direction of the Governor, plead in any cause, matter, or proceeding in which the state is interested or a party, may prosecute offenses against the law of the state, and may institute and conduct proceedings before grand juries; provided, that nothing herein contained shall limit the power of courts of record to appoint an attorney to prosecute criminal actions in such courts when the district attorney is disqualified or unable to act.

74 O.S. 2011, § 6

¶17 The statutory scheme regarding the Attorney General's authority is further laid out in Title 74, Section 18b, which designates the Attorney General as the chief law officer for the State of Oklahoma and enumerates the many duties of that office. With regard to the Attorney General's representation of the State in legal proceedings, the pertinent portions of Section 18b are as follows:

§A. The duties of the Attorney General as the chief law officer of the state shall be:

1. To appear for the state and prosecute and defend all actions and proceedings, civil or criminal, in the Supreme Court and Court of Criminal Appeals in which the state is interested as a party;

2. To appear for the state and prosecute and defend all actions and proceedings in any of the federal courts in which the state is interested as a party;

3. To initiate or appear in any action in which the interests of the state or the people of the state are at issue, or to appear at the request of the Governor, the Legislature, or either branch thereof, and prosecute and defend in any court or before any commission, board or officers any cause or proceeding, civil or criminal, in which the state may be a party or interested; and when so appearing in any such cause or proceeding, the Attorney General may, if the Attorney General deems it advisable and to the best interest of the state, take and assume control of the prosecution or defense of the state's interest therein;

74 O.S. Supp. 2022, § 18b

¶18 Relying largely upon Section 18b, the Attorney General asserts that he has broad authority to assume control of the State's defense in any litigation involving the State's interests. The Governor, however, points to the specific sections which provide him with the clear "authority to employ counsel to protect the rights or interest of the state" and to direct his chosen counsel how to proceed in that litigation. 74 O.S. Supp. 2019, § 18c74 O.S. 2021, § 6

C. The Constitution Vests the Governor with Supreme Executive Power 

¶19 Article VI, Section 1 of the Oklahoma Constitution enumerates the executive branch offices of the State. It provides:

The Executive authority of the state shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor and Inspector, Attorney General, State Treasurer, Superintendent of Public Instruction, Commissioner of Labor, Commissioner of Insurance and other officers provided by law and this Constitution, each of whom shall keep his office and public records, books and papers at the seat of government, and shall perform such duties as may be designated in this Constitution or prescribed by law.

Okla. Const. art. VI, § 1(A) (emphasis added).

¶20 The Constitution makes no further reference to the duties or powers of the Attorney General. With regard to the Governor, however, the Constitution states that "[t]he Supreme Executive power shall be vested in a Chief Magistrate, who shall be styled 'The Governor of the State of Oklahoma.'" Okla. Const. art. VI, § 2 (emphasis added). Section 8 of Article VI further provides that "[t]he Governor shall cause the laws of the State to be faithfully executed, and shall conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State with other states and with the United States, and he shall be a conservator of the peace throughout the State." Okla. Const. art. VI, § 8.

¶21 The Governor maintains that the Attorney General's attempt to take and assume control of the underlying case is incompatible with the Oklahoma Constitution. He points out that the Oklahoma Constitution does not enshrine any express powers of the Attorney General, and argues that the Attorney General's authority is constitutionally inferior to the Governor's. The Governor asserts that the Attorney General does not have superior powers in litigation involving the interests of the State, as such powers would interfere with the Governor's exercise of his "Supreme Executive power" as "Chief Magistrate" and his constitutional prerogative cannot be unwound or preempted by another executive officer.

¶22 In analyzing the Governor's argument, the federal court stated:

Governor Stitt's argument has some commonsense appeal, given the Oklahoma Constitution's use of the word "Supreme" to describe his executive power. On the other hand, that same document permits the state legislature to prescribe by law the duties of the Attorney General, which it has done by allowing him to "take and assume control" of the defense of the state's interests in litigation. And taken to its logical conclusion, Governor Stitt's position would mean that there is no sphere in which the Attorney General -- an independently elected constitutional officer -- may act to prosecute or defend the interests of the state against the wishes of the Governor. Whatever "Supreme Executive power" means under the Oklahoma Constitution, the Court is skeptical that it sweeps that broadly. In any event, the parties have brought to the Court's attention no case in which any Oklahoma court has addressed whether, under the Oklahoma Constitution, the Attorney General has a sphere of responsibility in which he may act independently from the Governor, and if so, the contours of that sphere.

Memorandum Opinion and Order; Rec. at 1521.

IV. ANALYSIS

D. The Attorney General Cannot Seize Control of the Federal Case Over the Objection of the Governor 

¶23 At the outset, we acknowledge the gravity of the question presented for resolution by this Court and its obvious impact upon the highest offices in the executive branch of our state government. We endeavor here to answer this certified question in a manner specific to the present case, without broad pronouncements. We desire to provide an answer which will guide these two officials to perform their duties in a manner that minimizes unnecessary disruption and best supports the ongoing function of our government. With this in mind, we hold that the Governor may continue to use his chosen counsel to represent the State's interests in the present case.

¶24 While the Oklahoma Constitution does not explicitly describe the Governor's authority over the other executive branch offices, we believe that a hierarchy is clearly contemplated by the above-quoted language in Article VI, Section 2. Black's Law Dictionary defines "magistrate" as the "highest-ranking official in a government, such as the king in a monarchy, the president in a republic, or the governor in a state. -- Also termed chief magistrate; first magistrate." Black's Law Dictionary (12th ed. 2024) (emphasis in original). The common definition of "supreme" is "highest in rank or authority (the supreme commander), especially: in a position of unquestioned authority, dominance, or influence." Merriam-Webster, https://www.merriam-webster.com/dictionary/ supreme (last visited July 31, 2024) (emphasis in original). This Court has held that the use of the word "supreme" to modify the term "executive power" indicates that the people intended to vest the Governor with the full range of executive powers which were recognized when the Oklahoma Constitution was adopted. Vandelay Ent., LLC v. Fallin, 2014 OK 109343 P.3d 1273

¶25 Long ago, the Kansas Supreme Court provided the following analysis regarding the "supreme executive power" of the Governor:

We do not find that the meaning of the phrase, "the supreme executive power" as contained in our Constitution and the Constitutions of many other states of this Union, has ever been precisely defined, although the matter is referred to in some decisions. Perhaps the term itself, taken in connection with the context, is sufficiently explicit. An executive department is created, consisting of a Governor and the other officers named, and he is designated as the one having the supreme executive power; that is, the highest in authority in that department.

State ex rel. Stubbs v. Dawson, 86 Kan. 180, 119 P. 360, 363 (1911) (holding Attorney General, if so directed by the Governor, was required to investigate and prosecute a proceeding under state prohibitory liquor law). Oklahoma's Constitution indicates a similar structure, where the executive department is headed by the Governor, who possesses Supreme Executive power, and serves as the highest authority in that department.

¶26 Relevant to our analysis here, the Alabama Supreme Court recently faced a similar issue in Riley v. Cornerstone Community Outreach, Inc., 57 So. 3d 704 (Ala. 2010). In Riley, the Alabama governor had established a task force on illegal gambling and appointed special prosecutors to enforce the state gambling laws. The underlying controversy involved the state's seizure and forfeiture action against certain electronic bingo gambling devices which had been confiscated. The Alabama attorney general eventually sought to assume direction and control of the ongoing action, discharge the governor's appointed special counsel, and dismiss the case. The Riley court rejected the attorney general's attempt to assume control, and held that the special prosecutors authorized by the governor "have the right to represent the State in this case and to see it through to completion." Riley at 741.

¶27 Alabama's constitution contains pertinent language very similar to Oklahoma's -- providing that the "supreme executive power" of the state "shall be vested in a chief magistrate," who holds the power to take care that the laws are faithfully executed. Ala. Const. art. V, §§ 113, 120. After a detailed analysis regarding the positions and responsibilities of the governor and the attorney general, the Riley court stated:

Our decision today is consistent with the fundamental but simple notion that "there is a constitutional hierarchy within the executive branch and one office--the Governor--is at its top." The "supreme executive power" is more than a "mere verbal adornment" of the office of Governor.

Id. at 740 (quoting a brief filed by the Alabama attorney general in a different case).

¶28 In his concurring opinion in Riley, Alabama's Chief Justice provided a succinct summary:

To me, the analysis can be condensed to a simple concept: Governor Riley is the governor. He is the leader of the executive branch. For our democratic form of government in our State to work as intended, someone must have the final say. The Alabama Constitution makes it clear that that person, for the executive branch, is the governor.

Riley at 741 (Cobb, C.J., concurring in part and concurring in the result) (emphasis added). The same is true of the Oklahoma Constitution and the hierarchy which it creates, placing the Governor at the top of the executive branch.

¶29 This Court long ago determined that the Governor's authority to bring suit in the name of the State was based upon constitutional grounds, rather than statute:

Thus it will be seen that the right of the Governor to bring suit in the name of the state, in all matters publici juris, is placed upon the high ground of his duty, under the Constitution of the state, to cause the laws to be faithfully executed, and not upon any statutory ground.

State v. Huston, 1908 OK 15797 P. 982

¶30 The seemingly broad statutory power granted to the Attorney General to direct and control litigation does not operate to override the Governor's constitutional role as Chief Magistrate or his authority to bring suit. Although both the Governor and the Attorney General possess similar authority, the Governor is ultimately the leader of the executive branch. Under the hierarchy contemplated in the Oklahoma Constitution, the Governor has the right to represent the State's interests in the present case.

¶31 In addition to the constitutional considerations, we turn to the basic rules of statutory construction to reconcile the relevant statutes. This Court has long emphasized the importance of construing a statute consistent with the legislative intent, in a manner that considers the general scope and meaning of the entire act. We have stated:

The general rules that apply in construing a statute are that the legislative intent must govern, and to arrive at the legislative intent, the entire act must be considered; a construction should be given the act which is reasonable and sensible, and should not be construed so that it would lead to an inconsistency between different parts as they bear upon each other.

Lancaster v. State, 1967 OK 84426 P.2d 714Wylie v. Chesser, 2007 OK 81173 P.3d 64See also Udall v. Udall, 1980 OK 99613 P.2d 742Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n, 1988 OK 117764 P.2d 172Naylor v. Petusky, 1992 OK 88834 P.2d 439YDF, Inc. v. Schlumar, Inc., 2006 OK 32136 P.3d 656American Airlines, Inc. v. Oklahoma Tax Comm'n, 2014 OK 95

¶32 In his quest to enter an appearance in the federal case, the Attorney General argues that, under Title 74, Section 18b, he has complete dominion over litigation involving the State, and although the Governor is authorized to employ counsel, the Attorney General has the power to take and assume control in any case involving the State's interests. We do not, however, read the Attorney General's statutory authority to extend so broadly. Although the Attorney General is given extensive authority to represent the State, he does not possess "complete dominion" over all litigation involving the State or state offices. Oklahoma's statutory scheme clearly contemplates that many state entities, including the office of the Governor, will retain their own counsel and direct the strategy in such representation.

¶33 While the final portion of Section 18b(A)(3) gives the Attorney General the power to "take and assume control" of litigation in which he appears, we see no indication in these provisions which would subordinate the Governor's express power to select his own counsel to that of the Attorney General. To the contrary, the Governor's authority to select and retain his own counsel is specifically expressed by two unambiguous statutes. 74 O.S. Supp. 2019, § 18c74 O.S. 2011, § 6Stitt v. Treat, 2024 OK 21546 P.3d 882Mutual Injury Trust Fund v. Coburn, 2016 OK 120386 P.3d 628South Tulsa Citizens Coalition, L.L.C. v. Arkansas River Bridge Auth., 2008 OK 4176 P.3d 1217

¶34 To be clear, the broad authority of the Attorney General to represent the State is not nullified by the statutes which permit the Governor to select his own counsel. Rather, the Governor's specific authority runs concurrently with the general authority of the Attorney General. A statutory interpretation to the contrary would create an absurd and inconsistent result, ignoring those provisions which allow the Governor to select his own counsel, and denying the Governor the ability to act where he is clearly authorized to do so. In addition to the authority expressly given by statute, a state officer generally has such powers "as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers." Marley v. Cannon, 1980 OK 147618 P.2d 401

¶35 In their briefs, both parties discuss State ex rel. Derryberry v. Kerr-McGee Corporation, 1973 OK 132516 P.2d 813Derryberry, a newly-elected Attorney General challenged the authority of his predecessor to settle a case. This Court stated that the "Attorney General's powers are as broad as the common law unless restricted or modified by statute, and that his authority to dismiss, settle or compromise the litigation in question, in the absence of fraud or collusion, is undisputed." Derryberry, 1973 OK 132

The Attorney General, by statute, 74 O.S. 1971 § 18In the absence of explicit legislative or constitutional expression to the contrary, he possesses complete dominion over every litigation in which he properly appears in the interest of the State, whether or not there is a relator or some other nominal party.

Derryberry, 1973 OK 132

¶36 We disagree with the Attorney General's interpretation of Derryberry. The above-quoted language recognizes that the Attorney General's dominion over a case can be overridden by "explicit legislative or constitutional expression to the contrary." Derryberry, 1973 OK 132

¶37 We hold that the Attorney General's statutory authority to take and assume control of the State's defense is subordinate to the Governor's constitutionally-granted Supreme Executive power, and statutorily-granted authority which gives him the right to represent the State and choose his counsel in defense of the action. See Okla. Const. art. VI, § 2; 74 O.S. §§ 6

E. Requests from the Speaker of the House and Senate Pro Tempore

¶38 The Attorney General asserts that both the House of Representatives and the Senate have requested that he assume control of the Governor's defense in the underlying case. He points to two letters sent to him -- one from the Speaker of the House and the other from the President Pro Tempore of the Senate -- in support of his appearance in the federal case.74 O.S. §18b

¶39 In response, the Governor furnished correspondence from another legislator, who challenged the support letters and pointed out the Legislature has approved no resolution regarding this case. Representative Tom Gann, in a letter to the Attorney General dated July 26, 2023, stated that Speaker McCall's letter was "not a reflection of the collective stance of the House of Representatives" and "certainly does not meet the legal requirements to represent 'The Legislature' as outlined in Title 74 18b(A)(C) [sic]."

¶40 The Attorney General maintains that, by virtue of the support letters from the Speaker and the President Pro Tem, he has authority to appear and assume control of the case pursuant to Derryberry. We disagree.

¶41 The Attorney General has furnished no persuasive authority that these letters from individual legislators constitute a proper request from either chamber of the Legislature.

F. The Governor's Position in the Federal Lawsuit is Not Inconsistent with State Law

¶42 The Attorney General argues that he has the power to take over representation of the State in the underlying federal case, over the objection of the Governor, because the gaming compacts are not valid under Oklahoma law and therefore the Governor's efforts to defend them in federal court are inconsistent with state law. The underlying case, however, involves more than just state law, and presents issues specific to the federal IGRA and its procedural nuances.

¶43 Granted, whether or not the compacts received approval under the federal IGRA process, their invalidity under Oklahoma law has been decided by this Court in Treat I and Treat II. It is Oklahoma law that determines whether a tribal gaming compact is consistent with the IGRA. Treat v. Stitt, 2020 OK 64473 P.3d 43Treat 1) (citing Pueblo of Santa Ana v. Kelly, 104 F.3d 1546, 1557 (10th Cir. 1997). Nonetheless, the very specific issue before the federal court goes one step further than that -- it concerns the timing of the federal process and whether the Secretary of the Interior's approval of the compacts under the IGRA is affected by the subsequent state court holdings. The Treat cases did not answer that question, as they dealt only with state law. Treat I at ¶ 3, 473 P.3d at 44 (issue before the Court is limited to whether the Governor had the authority to bind the State with respect to the new tribal gaming compacts under state law); Treat v. Stitt, 2021 OK 3481 P.3d 240Treat II) (state law prohibited the Governor from executing contracts with terms different from those in the Model Gaming Compact).

¶44 The IGRA is a federal statute, the interpretation of which presents a federal question suitable for determination by a federal court. See Pueblo of Santa Ana, supra, 104 F.3d at 1557 (10th Cir. 1997). It is within the purview of the federal court to articulate the impact, if any, which our Treat I and Treat II holdings have upon the approval of the compacts under the federal IGRA.

¶45 Governor Stitt, a named defendant in the federal case, does not contest this Court's findings in the Treat I and Treat II cases. Instead, his argument in the underlying case is that, as a matter of federal law, the after-the-fact state court decisions do not operate to unwind the federal approval process under the IGRA, and that any provisions which were subsequently determined to violate state law can be severed. See Memorandum of Law in Support of Defendant Governor J. Kevin Stitt's Rule 12(C) Motion, ECF # 154 and 154-1 at 18-21; Rec. at 1376-79. This Court need not attempt to predict how the federal court will rule on the merits, nor will we address questions regarding the interplay between the state and federal gaming laws which are not properly before us. That controversy should be allowed to play out in the D.C. District Court. We find no requirement in Oklahoma law that the Governor should abandon his arguments or his defense of the compacts in this regard.

G. The Governor Has a Right to Counsel Who Will Represent His Interests 

¶46 The Attorney General seeks to enter his appearance in the federal case as counsel "for J. Kevin Stitt, in his official capacity as the Governor of the State of Oklahoma." Notice of Appearance of Oklahoma Attorney General; Rec. at 1444. Because the Governor is named as a defendant in his official capacity, the Attorney General argues that the State of Oklahoma, and not the Governor, is the real party in interest. Thus, the Attorney General claims that he is simply seeking to represent the State of Oklahoma's interests by taking and assuming control of the Governor's defense.

¶47 An individual's "official capacity" usually refers to a person's status as a legally recognized representative of an entity. Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State, 2003 OK 263 P.3d 535Braswell v. U.S., 487 U.S. 99, 107--108, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988)). Suit against a government officer in his or her official capacity is actually a suit against the entity that the officer represents and is an attempt to impose liability upon the governmental entity. Speight v. Presley, 2008 OK 99203 P.3d 173Pellegrino, 2003 OK 263 P.3d 535McMillian v. Monroe County, 520 U.S. 781, 785, n. 2, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)). In the federal-law context, the distinction is relevant for state sovereign immunity and Eleventh Amendment considerations, where a suit seeking damages against a state official is generally no different than a suit against the state itself.

¶48 To answer the question certified to this Court, we need not delve into the complexities of sovereign immunity of the State or its officials. The Plaintiff tribes named the Governor as a party defendant in the federal case, and neither party here has raised an argument challenging that. Although the State of Oklahoma is ultimately the real party in interest, we disagree that the Attorney General may seize control of the defense based upon that fact alone. The Governor, in his official capacity, is answerable on behalf of the State in the underlying matter, and we conclude that he possesses statutory and constitutional authority to represent the interests of the State of Oklahoma in that proceeding.

¶49 From this conclusion, it flows logically that the Governor's participation as a named defendant in the underlying case includes the choice of counsel who will represent the Governor's position. We have held that the "right to be represented by counsel ordinarily should include the right to make a choice, if timely exercised, of attorneys whose views are consonant with one's own or who at least will present the client's interests." State ex rel. Howard v. Oklahoma Corp. Comm'n, 1980 OK 96614 P.2d 45

¶50 In Howard, the Corporation Commission argued it had the right to be represented by its own in-house counsel, and that the Attorney General, whose views were at variance with those of the Corporation Commission, should be excluded from appearing for it. This Court agreed -- we reasoned that where an entity is subject to being brought into court, it has the right to defend pursuant to Article II, Sections 6 and 7 of the Oklahoma Constitution. Section 6 provides that "[t]he courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Okla. Const. art. II, § 6. Section 7 states "[n]o person shall be deprived of life, liberty, or property, without due process of law." Okla. Const. art. II, § 7.

¶51 We reasoned that, if an entity has the constitutional right to defend, then "surely it is entitled to the benefit of counsel." Howard, 1980 OK 96Howard, 1980 OK 96

¶52 Having been brought into the underlying federal case as a named defendant, the Governor may defend the claims -- here, his retained counsel has represented the State's interests as directed by the Governor since the case began in 2021. As in Howard, we conclude that the Governor, in defending the claims asserted against the State, is entitled to be represented by an attorney whose views are consonant with his own, or who at least will represent those views on his behalf in the federal case.

H. The Sphere of the Attorney General's Responsibility

¶53 Our holding today answers the certified question, which asks only if the Attorney General may "take and assume control" of the "defense of the state's interest" in the instant case. We note that in the Memorandum Opinion and Order, the federal court expresses it is skeptical that the Governor's executive power sweeps so broadly as to prohibit the Attorney General from appearing for the State against the Governor's wishes. Memorandum Opinion and Order; Rec. at 1521. The federal court then states that the parties have not referenced any Oklahoma case which addresses whether the Attorney General has a sphere of responsibility in which he may act independently from the Governor, and if so, the contours of that sphere. Id.

¶54 We clarify that our conclusion today does not nullify the Attorney General's authority to appear ex officio in the present case. The following statement in Howard provides pertinent guidance:

[I]nasmuch as the views of the Commission's attorneys are at variance with those of the Attorney General, and the Attorney General is authorized to represent the views of that segment of the people of the State who may agree with his views, we deem it appropriate for that official to appear in this case ex officio.

Howard, 1980 OK 96

¶55 We agree with the federal court's skepticism about extending the Governor's power to unilaterally prevent the Attorney General from appearing in the case. By virtue of his office, the Attorney General may act independently from the Governor, and represent such segment of the State's interest not represented by the Governor. We will not attempt to predict the manner in which the Attorney General's involvement will correspond or conflict with the Governor's defense, or potentially impact the progress of the case. As with all complex litigation involving multiple parties with competing interests, judicial economy is balanced with other considerations of fairness and fundamental rights. We defer to the federal court to determine that portion of the State's interests, if any, which warrants additional involvement by the Attorney General versus those views which are adequately represented by the other parties in the case.

V. CONCLUSION

¶56 The Governor possesses statutory and constitutional authority to represent the interests of the State of Oklahoma in the underlying case, and his participation includes the choice of counsel who will represent the Governor's position. The Attorney General is authorized to appear as discussed herein, but he may not take and assume control of the defense of the State's interests in the present case, over the objection of the Governor, where the Governor has lawfully retained his own counsel.

CERTIFIED QUESTION ANSWERED

Rowe, C.J., Kuehn, V.C.J., Winchester, Edmondson, Combs (by separate writing), Gurich, Darby, Kane, JJ., concur

FOOTNOTES

See pertinent text of Section 18b infra at ¶ 17.

See discussion of Treat I and Treat II, infra, at ¶ 11.

74 O.S. Supp. 2012, § 1221

1. The Governor is authorized to negotiate and enter into cooperative agreements on behalf of this state with federally recognized Indian tribal governments within this state to address issues of mutual interest. The Governor may elect to name a designee who shall have authority to negotiate and enter into cooperative agreements on behalf of the state with federally recognized Indian tribes as provided for in this section. Except as otherwise provided by this subsection, such agreements shall become effective upon approval by the Joint Committee on State-Tribal Relations.

(A) Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.

(B) Any State and any Indian tribe may enter into a Tribal-State compact governing gaming activities on the Indian lands of the Indian tribe, but such compact shall take effect only when notice of approval by the Secretary of such compact has been published by the Secretary in the Federal Register.

Paragraph (d)(8) of 25 U.S.C. § 2710 states:

(A) The Secretary is authorized to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe.

(B) The Secretary may disapprove a compact described in subparagraph (A) only if such compact violates--

(i) any provision of this chapter,
(ii) any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or
(iii) the trust obligations of the United States to Indians.

(C) If the Secretary does not approve or disapprove a compact described in subparagraph (A) before the date that is 45 days after the date on which the compact is submitted to the Secretary for approval, the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter.

(D) The Secretary shall publish in the Federal Register notice of any Tribal-State compact that is approved, or considered to have been approved, under this paragraph.

Treat I on July 21, 2020 (reh'g denied Sept. 14, 2020), applicable to the Comanche Nation and Otoe-Missouria compacts. We issued Treat II on Jan. 26, 2021, applicable to the UKB and KTT compacts.

74 O.S. 2021 § 18cSee, e.g., 36 O.S. 2021 § 30537A O.S. 2021 § 1-10840 O.S. 2021 § 5-20243A O.S. 2021 § 2-20647 O.S. 2021 § 2-12157 O.S. 2021 § 508.174 O.S. 2021 § 61.474 O.S. 2021 § 150.2174 O.S. 2021 § 90874 O.S. 2021 § 2210

See, e.g., Fowler v. Stitt, 104 F.4th 770, 781--83 (10th Cir. 2024) (citations omitted) (holding that the Eleventh Amendment did not prohibit claims for injunctive and declaratory relief against Governor Stitt and other officials in their official capacities). We do note that, in contrast to the instant case, in Fowler, the Attorney General represented the Governor and other state defendants in the federal case.

_________________________________________________

 

COMBS, J., concurring specially:

¶1 I concur in the majority's holding that the Governor's participation as a named defendant includes the choice of counsel that will represent the Governor's position. I also agree that the Attorney General, Gentner Drummond, can appear ex officio to represent his views of the State of Oklahoma's interest in this matter.

¶2 However, the Attorney General has argued the compacts at issue in this matter have already been found to be invalid by this Court and we have held the Governor could not unilaterally execute them. Citing Treat v. Stitt, 2020 OK 64473 P.3d 43Treat v. Stitt, 2021 OK 3481 P.3d 240Treat v. Stitt decisions, which determined the compacts to be invalid, answers the issue before the federal court and the issue is now moot.